**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**

**PATRICIA ROBINSON,**

**Plaintiff,**

**vs.**

**HYUNDAI CAPITAL AMERICA, INC.
d/b/a GENESIS FINANCE USA,**

**Defendant.**

**Case No. 0:22-cv-61234-KMW**

---

## MEMORANDUM IN SUPPORT OF MOTION TO COMPEL ARBITRATION, TO DISMISS CASE WITH PREJUDICE, AND TO STRIKE CLASS ALLEGATIONS

Defendant Hyundai Capital America d/b/a Genesis Finance ("HCA")[1] hereby move to compel Plaintiff Patricia Robinson ("Plaintiff") to arbitrate her claims against HCA on an individual basis. HCA also requests that the Court dismiss the case with prejudice and strike Plaintiff's class allegations. In support of its Motion, HCA states as follows:

### INTRODUCTION

Under a lease agreement Plaintiff entered in 2018 through a dealership, which was subsequently assigned to HCA, Plaintiff agreed to arbitrate on an individual basis any and all claims relating to the lease. The lease was assigned to HCA by the dealership almost immediately (as is common practice) and with Plaintiff's knowledge. HCA is the proper entity to enforce the terms of the lease agreement, including the arbitration provision wherein Plaintiff agreed to arbitrate "any and all" disputes relating to the lease in arbitration, and on an individual – not class-

---

[1] HCA does business as Genesis Finance. *See* Declaration of Nayeli Saldivar, attached hereto as <u>Exhibit 1</u> (the "Saldivar Decl."), ⁋ 3; Compl. ⁋⁋ 1, 22. Accordingly, this Motion is properly brought by HCA and is inclusive of that business unit.

wide – basis.  She claims that when she exercised her lease buyout option under the lease terms, she was forced to pay more than was disclosed in the underlying lease contract (which HCA disputes).   Plaintiff then filed this class action suit against HCA, asserting two counts: (i) alleged violations of the Federal Consumer Leasing Act, 15 U.S.C. § 1677 *et seq*., and (ii) alleged violations of the Florida Deceptive and Unfair Trade Practice Act.

All of Plaintiff's claims are governed by the Federal Arbitration Act, 9 U.S.C. § 2 (the "FAA") which reflects a liberal federal policy favoring arbitration.  Because Plaintiff agreed to arbitrate her claims on an individual basis and waived her right to participate in a class action, the Court should compel Plaintiff to pursue her claims as she agreed under the lease transaction - in an individual arbitration.  Plaintiff also agreed that even threshold issues or arbitrability are to be decided by an arbitrator.  All of Plaintiff's claims are within the scope of the arbitration provision, so it proper for the Court to dismiss the case with prejudice.  As discussed more fully herein, HCA also respectfully requests that the Court strike Plaintiff's class allegations, given she agreed to waive those rights.  Plaintiff cannot sustain a class claim on its face for that reason alone.

## FACTUAL BACKGROUND

### A.     Plaintiff Leases A Vehicle from Rick Case Hyundai

On September 8, 2018, Plaintiff, along with a co-lessee Johnnie L. Robinson, entered into a consumer lease for a 2018 Hyundai Genesis G90 with a VIN ending in 6839  (the "Vehicle") at the Rick Case Hyundai dealership located in Plantation, Florida.  *See* Compl. ₧ 14; Saldivar Decl. ₧₧ 6-7.  Plaintiff executed a Retail Lease Order ("RLO") and a Motor Vehicle Lease Agreement

("MVLA") (collectively hereinafter referred to as the "Lease"). Saldivar Decl. ¶¶ 7, 18; *see also* Compl. ¶ 15, Ex. A. [2]

**B.     The Lease Was Assigned And Is Enforceable by HCA**

Rick Case Hyundai assigned all of its right, title and interest in the Lease to Hyundai Lease Titling Trust ("HLTT"). Saldivar Decl. ¶¶ 13-15, 20;[3] *see also* Compl. ¶ 22. Both the RLO and the MVLA were assigned by Rick Case Hyundai to HLTT. Saldivar Decl. ¶¶ 13-15, 19-20. HCA is the attorney-in-fact and exclusive servicing agent for HLTT. *Id*. ¶ 4. The RLO provides that the "Dealer's obligations and rights hereunder may be assigned as this Order shall inure to the benefit of the Dealer, its successors and/or assigns." *Id*. ¶ 15. The MVLA provides that "[a]fter you sign this Lease, we will assign it to Hyundai Lease Titling Trust ("HLTT") and the terms 'Assignee,' 'we,' 'us' and 'our' will refer to HLTT and its agents or to any subsequent assignee." *Id*. ¶ 19.

**C.     Pursuant to the Lease, Plaintiff Agrees to Arbitrate her Claims On An Individual Basis.**

The Lease contains an Arbitration Provision, which provides that:

> **EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL**
> . . .
> **IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS**.

---

[2] Plaintiff attached only the MVLA to her Complaint. A true and correct copy of the RLO Plaintiff executed contemporaneously as part of the lease transaction is attached hereto. *See* Saldivar Decl. ¶ 7, Ex. A.

[3] Relevant portions of the exhibits attached to the Saldivar Decl. have been highlighted by counsel for Defendants for the Court's ease of reference.

*Id*. ¶ 8 (emphasis in original).  The Arbitration Provision broadly defines the scope of the provision to mean:

> [a]ny claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase, condition of this Vehicle, this Order and Agreement or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Order and Agreement) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action.

*Id*. ¶ 9.  The Arbitration Provision further provides that "[a]ny claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action.  You expressly waive any right you may have to arbitrate a class action."  *Id.* ¶ 10.  It is also states that  "[t]he Arbitration Provision shall survive any termination, payoff or transfer of this Order and Agreement." *Id.*  ¶ 11.

Directly above the Plaintiff's signature lines on the RLO, there are two important statements indicating that Plaintiff read and agreed to the Arbitration Provision.  First, there is a conspicuous warning to Plaintiff stating: "**CUSTOMER HAS READ, UNDERSTANDS AND ACCEPTS ALL PROVISIONS OF THIS ORDER AND THE WARRANTY STATEMENT.**"  *Id.*  ¶ 16.  Second, there is a conspicuous acknowledgement above one of Plaintiff's signatures on the RLO which states "**You have read each page of this Order and Agreement, including the arbitration provision on the reverse side, and agree to its terms. You have received a completely filled in copy of this Order.**" *Id.*  ¶ 17.

The last page of the MVLA provides a separate class action waiver, which Plaintiff acknowledged and agreed to by placing her initials at the bottom of the page.  The class waiver provides:

> **Q.    CLASS ACTION WAIVER: TO THE EXTENT PERMITTED BY APPLICABLE LAW, YOU HEREBY WAIVE**

> **ANY RIGHT YOU MAY HAVE TO BRING OR PARTICIPATE IN A CLASS ACTION RELATED TO THIS LEASE.**

*Id.* ¶ 21.   Above Plaintiff's signature on page five of the Lease Agreement, Plaintiff also acknowledged that:

> **BY SIGNING BELOW, YOU ACKNOWLEDGE THAT: (1) YOU HAVE READ THE ENTIRE LEASE; (2) YOU AGREE TO ALL OF THE PROVISIONS OF THIS LEASE; (3) YOU HAVE RECEIVED A COMPLETELY FILLED IN COPY OF THIS LEASE; . . .**

*Id.* ¶ 22.   HCA has not waived the arbitration or class action waiver provisions.  *Id.* ¶ 25.

### D.   Plaintiff Files This Class-Action Complaint Based on a Theory That HCA Did Not Disclose Certain Fees and Charges in Connection With Her Lease Buyout

On June 28, 2022, Plaintiff filed this putative nationwide class action lawsuit, alleging certain fees and charges associated with her lease buyout were not disclosed and forced Plaintiff to pay more than the purchase option under the terms of the Lease.  Compl. *generally*.

### LEGAL STANDARD

When all of the issued raised in a case are subject to arbitration and arbitration is compelled, the case may be properly dismissed with prejudice.  *See Olsher Metals Corp. v. Olsher*, No. 01-3212-CIV-JORDAN, 2003 WL 25600635, at *9 (S.D. Fla. Mar. 26, 2003), *aff'd*, 90 F. App'x 383 (11th Cir. 2003) (compelling arbitration and dismissing case with prejudice where all claims were subject to arbitration).  *See also Caley v. Gulfstrearn Aerospace Corp.,* 333 F.Supp.2d 1367 (N.D.Ga.2004)  *aff'd* 428 F.3d 1359 (11th Cir.2005) ("The weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration") (emphasis in original); *Hodgson v. NCL (Bahamas), Ltd.*, 151 F. Supp. 3d 1315, 1317 (S.D. Fla. 2015) (compelling arbitration, denying Plaintiff's request to stay the case, and dismissing the case, reasoning that "[e]ach claim alleged in Plaintiff's Complaint falls within the

purview of the arbitration provision . . . and therefore, there is nothing remaining for this Court to consider"); *Eco Brands, LLC by & through Midas Fin. Grp., LLC v. Eco Brands, LLC*, No. 20-21713-CIV, 2021 WL 724924, at *7 (S.D. Fla. Feb. 5, 2021), *report and recommendation adopted*, No. 20-21713-CV, 2021 WL 722801 (S.D. Fla. Feb. 24, 2021) (granting motion to compel arbitration, delegating arbitrability of claims to an arbitrator, and dismissing the case).

Federal Rule of Civil Procedure 12(f) provides that courts "'may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter.'" *Gill-Samuel v. Nova Biomedical Corp.*, 298 F.R.D. 693, 699 (S.D. Fla. 2014) (quoting Fed. R. Civ. P. 12(f)). The function of a Rule 12(f) motion is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi—Craft Co*., 618 F.3d 970, 973 (9th Cir. 2010). Where the complaint demonstrates that a class action cannot be maintained on the facts alleged, courts have granted motions to strike class allegations.

## **ARGUMENT**

### I. **THE COURT SHOULD COMPEL PLAINTIFF TO ARBITRATE HER CLAIMS ON AN INDIVIDUAL BASIS AND DISMISS THE CASE.**

#### A. **The Federal Arbitration Act Mandates Enforcement of The Arbitration Provision.**

Plaintiff's claims are governed by the FAA. Under the FAA, written agreements to arbitrate controversies arising out of an existing contract "shall be valid, irrevocable and enforceable." 9 U.S.C. § 2. The FAA embodies a liberal federal policy in favor of arbitration. *See Whiting-Turner Contracting Co. v. Elec. Mach. Enters.* (*In re Elec. Mach. Enters., Inc.*.), 479 F.3d 791 (11th Cir. 2007); *see also Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1263-64 (11th Cir. 2017) (citations omitted) ("It is by now basic hornbook law that the [FAA] . . . reflects 'both a

liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract.'")

The purpose of the FAA was to reverse the enduring "judicial hostility to arbitration agreements that existed at English common law" and that was subsequently adopted by American courts. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991) (citing *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 219–20, and n. 6, (1985)). The drafters of the Act intended to place arbitration agreements '"upon the same footing as other contracts, where it belongs,'" and "overrule the judiciary's longstanding refusal to enforce agreements to arbitrate." *Dean Witter*, 470 U.S. at 219–20 (quoting H.R. Rep. No. 96, 68th Cong., 1st Sess., 1 (1924)); *see also Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 89 (2000). ("We conclude, however, on consideration of Congress' intent in passing the statute, that a court must compel arbitration of otherwise arbitrable claims, when a motion to compel arbitration is made.  The legislative history of the Act establishes that the purpose behind its passage was to ensure judicial enforcement of privately made agreements to arbitrate."  *Dean Witter*, 470 U.S. at 219).

The FAA creates a "presumption of arbitrability" such that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1115–16 (11th Cir. 2014).  There is an '"emphatic federal policy in favor of arbitral dispute resolution,'" and courts are to construe '"any doubts concerning the scope of arbitrable issues . . . in favor of arbitration."' *Cordoba v. DIRECTV, LLC*, 801 F. App'x 723, 725 (11th Cir. 2020) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc*., 473 U.S. 614, 626, 631, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)); *see also Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016) (same).  '"By its terms, the [FAA] leaves no room for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to

proceed to arbitration on issues as to which an arbitration agreement has been signed.'" *Jewelry Repair Enterprises, Inc. v. Son Le Enterprises, Inc.,* No. 9:15-CV-81622, 2016 WL 660904, at *3 (S.D. Fla. Feb. 18, 2016) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 213 (1985) (emphasis in original)).

Here, the Arbitration Provision in the Lease expressly states that "[a]ny arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration." Saldivar Decl., ¶ 14; Ex. 1 at 4.  The Arbitration Provision's express designation of the FAA as its governing law is sufficient to bring it within the FAA's purview.  *See Brown v. Napleton's W. Palm Hyundai*, No. 20-81903-CIV, 2021 WL 3286852, at *2 (S.D. Fla. July 23, 2021) (compelling arbitration and applying FAA where contract contained identical language that the arbitration would be governed by the FAA); *Perei v. Arrigo DCJ Sawgrass, Inc.*, No. 18-CV-60091, 2018 WL 1182570, at *2 n.1 (S.D. Fla. Mar. 7, 2018) (same)

Accordingly, the FAA governs the Arbitration Agreement,[4] and as a result, the Court must apply federal substantive law under the FAA to determine whether the parties agreed to arbitrate this dispute.  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)

---

[4] The FAA also controls because the transaction involves interstate commerce. *See Visiting Nurse Ass'n of Fla., Inc. v. Jupiter Med. Ctr., Inc*., 154 So. 3d 1115, 1125 (Fla. 2014) (applying FAA where transaction involved interstate commerce); *Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 115 S. Ct. 834, 835, 130 L. Ed. 2d 753 (1995) (holding that the FAA should be read broadly to extend the Act's reach to the limits of Congress' Commerce Clause power where a written arbitration provision in a contract evidences a transaction involving interstate commerce). Here, Plaintiff alleges HCA is a California corporation and that Plaintiff resides in Florida (*see* Comp. ¶¶ 11-12).  The Lease also provided that it was immediately being assigned to HCA. *Id.* at Ex. 1 at p. 4; Saldivar Decl., ¶¶ 13-15, 19-20. Accordingly, the transaction necessarily involves interstate commerce and the FAA controls for this additional reason.

(the Court must apply "the 'federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage'" of the FAA).

**B.** **The Validity Of The Arbitration Provision Must Be Decided By the Arbitrator.**

To the extent Plaintiff argues that a valid arbitration agreement does not exist (which HCA disputes), the Court need not address that threshold question because the Arbitration Provision states explicitly that the "arbitrability of the claim or dispute . . . shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action."  Saldivar Decl., ¶ 9, Ex. A.

Such language is generally known as the delegation provision. "The delegation provision is an agreement to arbitrate threshold issues concerning the arbitration agreement."  *Rent-A-Center, West, Inc. v. Jackson*, 130 S.Ct. 2772, 2777 (2010) (holding that the delegation clause in an arbitration provision grants the arbitrator exclusive authority to resolve any dispute relating to the agreement's enforceability).  Parties "can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."  *Id.*

Because the delegation provision encompasses any issue, it encompasses Plaintiff's Claims for relief.  *In re Checking Account Overdraft Litig. MDL No. 2036*, 674 F.3d 1252, 1256 (11th Cir. 2012); *citing Anders v. Hometown Mortg. Servs., Inc.*, 346 F.3d 1024, 1028 (11th Cir. 2003) ("'The agreement could not have been broader.  Any disputes, means all disputes, because 'any' means all.'"  (some quotation marks omitted)). "When an arbitration agreement contains a delegation provision and the plaintiff raises a challenge to the contract *as a whole*, the federal courts may not review her claim because it has been committed to the power of the arbitrator."  *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1146 (11th Cir. 2015) (emphasis added) (citations omitted).  *See also Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1262 (11th Cir. 2017).

As the Supreme Court explained:

> [T]she question "who has the primary power to decide arbitrability" turns upon what the parties agreed about that matter. Did the parties agree to submit the arbitrability question itself to arbitration? If so, then the court's standard for reviewing the arbitrator's decision about that matter should not differ from the standard courts apply when they review any other matter that parties have agreed to arbitrate. That is to say, the court should give considerable leeway to the arbitrator, setting aside her or his decision only in certain narrow circumstances.

*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995).

Here, the arbitration provision provides that:

> [a]ny claim or dispute, whether in contract, tort, statute or otherwise **(including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute),** between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase, condition of this Vehicle, this Order and Agreement or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Order and Agreement) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action.

Saldivar Decl., ¶ 9, Ex. A. Thus, there can be no doubt that in addition to resolving any claims and disputes through arbitration, the parties also intended to delegate even gateway issues relating to arbitrability to an arbitrator. As such, the Court's inquiry should end here, and the Court should compel arbitration.

### C.   Under The FAA and The Arbitration Provision, Plaintiff Must Arbitrate Her Claims On An Individual Basis.

Even if the Court does not enforce the delegation clause—and it must—the Court should nonetheless compel arbitration. The FAA creates a "'presumption of arbitrability' such that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016) (quoting *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1115–16 (11th Cir. 2014)). "[T]he party resisting arbitration

bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000).  Thus, "[w]hen presented with a motion to compel arbitration, a district court will consider three factors: (1) whether a valid agreement to arbitrate exists, (2) whether an arbitrable issue exists, and (3) whether the right to arbitrate was waived." *Abellard v. Wells Fargo Bank, N.A.*, No. 19-CV-60099, 2019 WL 2106389, at *2 (S.D. Fla. May 14, 2019) citing *Nat'l Auto Lenders, Inc. v. SysLOCATE, Inc.*, 686 F. Supp. 2d 1318, 1322 (S.D. Fla. 2010) *aff'd*, 433 F. App'x 842 (11th Cir. 2011).  Here, these factors are easily satisfied.

### i.   The Parties Are Bound By Their Valid, Written Arbitration Agreement.

The Court must look to ordinary contract principles in determining whether a party is bound by the terms of a written arbitration agreement while giving due regard to the federal policy in favor of arbitration. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ*. 489 U.S. 468, 47576 (1989).  Thus, the FAA governs the enforceability of the arbitration agreement according to its terms, and Florida law governs the determination of whether a valid contract to arbitrate exists.

"To prove the existence of a contract under Florida law, the party seeking to enforce the contract must prove by a preponderance of the evidence: '"(1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms.'" *Sinclair v. Wireless Advocs., LLC*, No. 20-CV-60886-RAR, 2021 WL 865458, at *7 (S.D. Fla. Mar. 1, 2021) (quoting *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009).

If the moving party shows the existence of an agreement, the burden shifts to the party opposing arbitration to "show that no valid contract existed." *Herrera Cedeno v. Morgan Stanley Smith Barney, LLC*, 154 F. Supp. 3d 1318, 1325 (S.D. Fla. 2016). To meet that burden, a non-

moving party must "unequivocally deny that an agreement to arbitrate was reached and must offer some evidence to substantiate the denial." *Magnolia Capital Advisors v. Bear Stearns & Co.*, 272 F. App'x 782, 785 (11th Cir. 2008) (citation omitted).  Moreover, written arbitration clauses need not be signed by both parties in Florida in order to be enforceable.  *See H.W. Gay Enters., Inc. v. John Hall Elec. Contracting, Inc.*, 792 So. 2d 580, 581 (Fla. 4th DCA 2001); *see also Interpool Ltd. v. Through Transport Mut. Ins. Ass'n Ltd.*, 635 F. Supp. 1503, 1505 (S.D. Fla. 1985) ("party may be bound by an agreement to arbitration even in the absence of a signature"); *Germann v. Age Inst. of Fla., Inc.,* 912 So.2d 590, 592 (Fla.Dist.Ct.App.2005) (a "nonsignatory to an arbitration agreement may be bound to arbitrate if the nonsignatory has received something more than an incidental or consequential benefit of the contract.")

Here, a valid Arbitration Provision exists between Plaintiff and HCA.  On September 8, 2018, Rick Case Hyundai offered to lease Plaintiff the Vehicle under the terms set forth in the RLO and in the MVLA.  Plaintiff accepted the offer by executing the Lease.  *See* Compl. Ex. A; Saldivar Decl. ¶¶ 7, 18.  In consideration for Plaintiff's possession of the Vehicle for a 36 month term, the terms of the Lease provided that Plaintiff was to make monthly payments in the amount of $785.35 for 36 months.  *Id*., Ex. 1; Saldivar Decl., Ex. 2. Plaintiff also accepted certain disclosures and terms in the RLO, including an arbitration and class waiver provisions.  *Id*. ¶ 8. The RLO also contained a Dealer's Right to Cancel in the event that Plaintiff failed to execute a separate Lease Agreement document, if credit approval could not be obtained for Plaintiff, or if the dealer was unable to assign the Lease to a financial institution within a certain period of time. *Id.* at Ex. 1.  There is an acknowledgement above one of Plaintiff's signatures on the RLO which states "You have read each page of this Order and Agreement, including the arbitration provision on the reverse side, and agree to its terms.  You have received a completely filled in copy of this

Order." Saldivar Decl. ℙ 17.  Above Plaintiff's signature on page four of the Lease Agreement, Plaintiff also acknowledged that: **"BY SIGNING BELOW, YOU ACKNOWLEDGE THAT: (1) YOU HAVE READ THE ENTIRE LEASE; (2) YOU AGREE TO ALL OF THE PROVISIONS OF THIS LEASE; (3) YOU HAVE RECEIVED A COMPLETELY FILLED IN COPY OF THIS LEASE; . . . ."** *Id.* ℙ 22.  The Lease contains conspicuous arbitration and class waiver provisions that Plaintiff acknowledges she read.  Saldivar Decl. ℙℙ 8,213.

The Lease was then assigned to HLTT by Rick Case Hyundai.  *See id.* ℙℙ 13-15, 19-20, Ex. A at p. 1 (the RLO further provides that "Dealer's obligations and rights hereunder may be assigned as this order shall inure to the benefit of the Dealer, its successors and/or assigns."); *id..* Ex. B ("After you sign this Lease, we will assign it to Hyundai Lease Titling Trust ("HLTT") and the terms  "Assignee,"  "we," "us," and "our" will refer to HLTT and its agents or to any subsequent assignee.").  HCA, as the attorney-in-fact and exclusive servicing agent for the HLTT, and as the initial beneficiary of HLTT and "beneficial owner" has the right to enforce the terms of the RLO (*id.*, Ex. A) and the MVLA (*id.*, Ex. B) for HLTT.  *Id.* ℙℙ 4-5.

As set forth above, a valid contract exists and HCA has the right to enforce the Arbitration Provision set forth in the Lease.

### ii.    HCA Has The Right To Enforce the Arbitration Provision

To the extent Plaintiff seeks to argue that HCA is unable enforce the Arbitration Provision because HCA is not a signatory on the RLO, or intends to argue that the Arbitration Provision was somehow not assigned to HCA as part of the lease transaction, this Court has already found under similar circumstances that those arguments lack merit.

In *Tyman v. Ford Motor Co*., 521 F. Supp. 3d 1222 (S.D. Fla. 2021), like Plaintiff here, the plaintiff in that case executed a RLO and MVLA.   The Court recognized that the RLO

consummates the Plaintiff's agreement to lease the vehicle, and the MVLA concerns the financing of that lease. *Id.* at 1224. At issue in *Tyman* was an identical RLO arbitration provision which applied to:

> . . . you and us or our employees, agents, successors, <u>or assigns</u>, which arise out of or relates to your credit application, purchase or condition of this Vehicle, this Order and Agreement or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Order and Agreement) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action.

*Tyman*, 521 F. Supp. 3d at 1226 (emphasis added); *compare* Saldivar Decl. ¶ 10, Ex. A. The *Tyman* Court granted the motion to compel arbitration, finding that the defendant, as a non-signatory, could rely on equitable estoppel principles to compel a signatory to arbitrate a dispute. The Court found that equitable estopped applied because the defendant "as a non-signatory to the Agreements which contain the arbitration provisions, has demonstrated that the facts allegations in the complaint are intertwined with the underlying Agreements between Plaintiff and the Dealer." *Id.* at 1231.

One of the cases that the *Tyman* court found persuasive in its finding that "[c]ourts have repeatedly allowed non-signatories to enforce arbitration provisions . . ." is *Brown v. Sklar-Markind*, No. CIV.A. 14-0266, 2014 WL 5803135, at *13 (W.D. Pa. Nov. 7, 2014). *Tyman*, 521 F. Supp. 3d at 1230. In *Brown*, the court granted a motion to compel arbitration brought by a non-signatory and reasoned that the contract expressly applied to "'any resulting transaction or relationship, including that with the dealer, or any result [sic] transaction with third parties who do not sign this contract.'" *Id.* at *13 (internal citations omitted). Here, the RLO's Arbitration Provision contains identical language. *See* Saldivar Decl., ¶ 8.

In *Tyman*, both the RLO and MVLA contained arbitration provisions. Here, the RLO contains an arbitration provision and the MVLA does not. *Id.* at Exs. A, B. To the extent Plaintiff

13

may argue that HCA is unable to enforce the RLO's Arbitration Provision, she would still be wrong. *See, e.g. Curiale v. Hyundai Cap. Am. Inc*., No. A-5565-18T3, 2020 WL 1983231, at *5 (N.J. Super. Ct. App. Div. Apr. 27, 2020), *cert. denied*, 244 N.J. 346, 240 A.3d 394 (2020) (reversing district court's denial of HCA's motion to compel arbitration). Like the circumstances here, in *Curiale*, only the Retail Order contained an arbitration provision and the Lease Agreement did not. The Plaintiff in that case argued that the Retail Order and Lease Agreement were separately executed documents and the Retail Order's arbitration provision could therefore not be applied to the lease. The court rejected that argument, finding that "'[w]here [an] agreement is evidenced by more than one writing, all of them are to be read together and construed as one contract'" and that "[a] non-signatory can become a party to an arbitration agreement through assignment." *Curiale*, 2020 WL 1983231, at *5; *Cf. Walker v. Hyundai Capital America, Inc.*, Case No. CV417-045, 2018 WL 1352173 (S.D. Ga. March 15, 2018) (applying an arbitration agreement in a vehicle purchase agreement to cover claims under an interrelated Retail Installment Contract); *Wells Fargo Auto Finance, Inc. v. Wright*, 698 S.E.2d 17,18-19 (Ct. App. Ga. 2010) (enforcing a separately signed arbitration agreement to claims arising out of a vehicle Retail Installment Contract because "as the retail sales contract, installment contract, and the Agreement were executed simultaneously, they should be read and construed together.").

Likewise here, the claims at issue are necessarily intertwined with the lease transaction originally entered into between Plaintiff and Rick Case Hyundai. Plaintiff alleges that she contacted both Rick Case Hyundai and HCA (d/b/a Genesis Finance) about a lease buyout. Compl. ¶¶ 22-24. Plaintiff purchased the Vehicle from the Rick Case Hyundai dealership, and Plaintiff alleges she was forced to pay more than she agreed to under the Purchase Option under the Lease. *Id*. ¶¶ 24-28. As such, HCA is within its rights to enforce the Arbitration Provision in the Lease.

### iii.    The Broad Language in the Arbitration Provision Covers Plaintiff's Dispute.

What is also clear is that Plaintiff's claims fall within the substantive scope of the provisions of the Arbitration Agreement.  When determining the scope of an arbitration provision, a court must look to the factual allegations of the complaint and determine whether the claims alleged therein touch matters covered by the arbitration provisions. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. at 625 n. 13.  In making this analysis, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration."  *Volt Info. Sci., Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989).  The presumption of arbitrability, created by the mere existence of an arbitration clause, can be overcome **only** if "'it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage.'" *AT & T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650, 654 (1986) (citations omitted).

As detailed above, the Arbitration Provision at issue is broad in scope, and covers "any claim or dispute" between the parties, including claims based on "the interpretation and scope of [the] Arbitration Provision, and the arbitrability of the claim or dispute"). Saldivar Decl., ¶ 9.  Thus, Plaintiff's Complaint, which asserts claims premised on purported charges not properly disclosed in connection with her Lease and the buy-out option provision, is undeniably asserting claims within the scope of the Arbitration Agreement.

Plaintiff here cannot show "'with positive assurance that the arbitration [provision] is not susceptible of an interpretation that covers the asserted dispute.'" *AT&T Techs., Inc*., 475 U.S. at 652.  Accordingly, Plaintiff's claims against HCA are subject to arbitration under the broad scope

of the arbitration provision and further issues relating to the arbitrability of claims should be reserved for the arbitrator, as required by the parties' agreement and applicable law.

### iv.    HCA Has Not Waived Its Right To Arbitrate Plaintiff's Claims

This case is ripe to consider HCA's Motion.  "An agreement to arbitrate is waivable, and courts should not compel arbitration 'when the party who seeks to compel arbitration has waived that right.'"  *Pirtek USA, LLC v. Twillman*, No. 6:16-cv-01302-Orl-37TBS, 2016 WL 7116205, at *5 (M.D. Fla. Dec. 7, 2016) (quoting *In re Checking Account Overdraft Litig.,* 754 F.3d 1290, 1294 (11th Cir. 2014)).  "Nonetheless, courts must address waiver issues with 'a healthy regard for the federal policy favoring arbitration.'"  *Id.* (quoting *Grigsby & Assocs., Inc. v. M. Secs. Inv.*, 635 Fed Appx. 728, 731-33 (11th Cir. 2015)).  "As such, parties bear a heavy burden in seeking to establish waiver of arbitration rights." *Id.*

"Courts may find waiver when 'under the totality of the circumstances,' the party seeking to compel arbitration 'has acted inconsistently with the arbitration right and, in so acting, has in some way prejudiced the other party.'" *Id.* (quoting *S & H Contractors, Inc. v. A.J. Taft Coal Co. Inc.*, 906 F.2d 1507, 1514 (11th Cir. 1990)).  When determining whether a party has been prejudiced, courts may consider the length of delay in demanding arbitration.  *Id.*  Courts must also consider the expense incurred by a party from participating in the litigation process.  *Id.*

Here, HCA has not acted inconsistently with its arbitration rights.  HCA has not filed any responsive pleading nor has discovery commenced.  HCA also asked for Plaintiff's stipulation to arbitration on an individual basis early on in the case, but that request was denied.  Under the totality of the circumstances, HCA has taken no act inconsistent with its right to compel arbitration of Plaintiff's claims.  *See also* Saldivar Decl ¶ 23. Plaintiff has not been prejudiced by HCA's limited participation in this case to date.  Accordingly, HCA has not waived its arbitration rights.

**D.**      <u>**The Court Should Dismiss The Case**</u>

Having established that Plaintiff is required to arbitrate her claims on an individual basis, the Court should dismiss the case.  Where the moving party establishes the necessary elements for upholding the validity and enforceability of a claim, proving that the parties agreed to arbitrate such a claim, and that they have not previously waived the right to arbitrate the claim, "the FAA requires a court to either stay or dismiss a lawsuit and to compel arbitration." *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008).

Where all issues presented in the lawsuit are arbitrable, the Eleventh Circuit and this Court have found that a dismissal of the lawsuit is a proper remedy. *See Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1379 (11th Cir. 2005); *Perera v. H&R Block Eastern Enterps., Inc.*, 914 F. Supp. 2d 1284, 1290 (S.D. Fla. 2012) (King, J.); *Stapleton v. Nordstrom, Inc.*, No. 19-20193, 2009 WL 10667803, at *4 (S.D. Fla. Aug. 11, 2009), *report and recommendation adopted*, No. 09-20193-CIV, 2009 WL 10668756 (S.D. Fla. Sept. 30, 2009) (Seitz, J.)*; Abellard*, 2019 WL 2106389, at *4 (citing *Perera* in support of the statement that "where the Court compels arbitration of all of the claims involved, the Court sees no benefit to a stay, as opposed to dismissal.").  Here, because Plaintiff's sole claim asserted in this action is subject to arbitration, this Court should exercise its discretion to dismiss the case with prejudice.

Alternatively, HCA seeks a stay of these proceedings pending such arbitration.  To that end, the FAA provides that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, <u>**shall on application of one of the parties stay the trial of the action until such arbitration has been had**</u> in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

17

9 U.S.C. § 3 (emphasis added).

The Eleventh Circuit has held "the FAA's enforcement sections require a court to stay a proceeding where the issue in the proceeding is referable to arbitration under an *agreement in writing* for such arbitration." *Caley v. Gulfstream Aerospace Corp*., 428 F.3d 1359, 1368 (11th Cir. 2005) (citation omitted). Thus, should the Court agree with HCA that Plaintiff's claim is governed by the Arbitration Provision, but that dismissal is not appropriate, HCA respectfully requests that this Court stay this case pending arbitration of Plaintiff's claim.

## II.    THE COURT SHOULD STRIKE PLAINTIFF'S CLASS ALLEGATIONS

The Court should strike Plaintiff's class allegations because Plaintiff waived her right to participate in or be a member of a class action.   Class-action waivers are enforceable the Eleventh Circuit both in connection with an arbitration provision and as a stand-alone provision in a contract. *See e.g. Roman v. Spirit Airlines, Inc*., 482 F. Supp. 3d 1304, 1315 (S.D. Fla. 2020), *aff'd*, No. 20-13699, 2021 WL 4317318 (11th Cir. Sept. 23, 2021) (enforcing stand-alone class action waiver and holding that "[u]nder both federal and Florida law, '[i]t is well-established that parties can agree to class action waivers.'") (internal quotation and citation omitted); *Pendergast v. Sprint Nextel Corp.*, 691 F.3d 1224, 1234 (11th Cir. 2012) ("to the extent Florida law would invalidate the class action waiver, it would still be preempted by the FAA."); *Suarez v. Uber Techs., Inc.*, No. 8:16-CV-166-T-30MAP, 2016 WL 2348706, at *5 (M.D. Fla. May 4, 2016), *aff'd*, 688 F. App'x 777 (11th Cir. 2017) ("the law is clear that the waiver of class/collective claims cannot render the Arbitration Provision unconscionable.").

Here, Plaintiff first agreed in the Arbitration Provision of the Lease that she would arbitrate "[a]ny claim or dispute" and "by a single arbitrator on an individual basis and not as a class action" when she executed the Retail Sale Order in connection with the lease transaction.  Saldivar Decl.,

¶ 9.  Even more conspicuous, the document also states "**IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.**" *Id*. ¶ 8.  Plaintiff again separately waived her right to bring or participate in a class action when she executed the MVLA in connection with the lease transaction.  *See Id.* ¶¶ 21 ("**CLASS ACTION WAIVER: TO THE EXTENT PERMITTED BY APPLICABLE LAW, YOU HEREBY WAIVE ANY RIGHT YOU MAY HAVE TO BRING OR PARTICIPATE IN A CLASS ACTION RELATED TO THIS LEASE.**")

The Court should enforce the Arbitration Provision according to its terms, including the limitation that claims covered by the arbitration clause may only be pursued on an individual basis through arbitration.  *See Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1619 (2018) ("Congress has instructed federal courts to enforce arbitration agreements according to their terms—including terms providing for individualized proceedings.").  The Court should also enforce the stand-alone class action waiver set forth in the MVLA.

Here, both the RLO and MVLA contain unambiguous class action waiver provisions.  This Court, like others, should simultaneously compel arbitration and strike Plaintiff's class allegations, ordering plaintiffs to arbitrate their claims on an individual basis.  *See, e.g., Lamour v. Uber Techs., Inc.*, No. 1:16-CIV-21449, 2017 WL 878712, at *11 (S.D. Fla. Mar. 1, 2017), *report and recommendation adopted*, No. 16-21449-CIV, 2017 WL 11631486 (S.D. Fla. Aug. 28, 2017) (granting motion to strike class allegations where arbitration provision stated that the parties agreed to resolve disputes through arbitration on an individual basis only); *Suarez v. Uber Techs., Inc.*,

No. 8:16-CV-166-T-30MAP, 2016 WL 2348706, at *1 (M.D. Fla. May 4, 2016), *aff'd*, 688 F. App'x 777 (11th Cir. 2017) (same).

Accordingly, this Court should compel Plaintiff to arbitrate her claims against HCA through an individual arbitration proceeding, and strike the class allegations from the Complaint, including any requests for relief on behalf of anyone other than Plaintiff.

### III.   <u>CONCLUSION</u>

For the reasons detailed above, HCA respectfully requests that this Court grant its Motion to Compel Arbitration, dismiss Plaintiff's claims with prejudice, and strike Plaintiff's class allegations.  Further, because Plaintiff has articulated no valid reason for refusing to dismiss and re-file her dispute in the parties' chosen arbitration forum, HCA reserves its right to seek its costs and fees associated with this Motion.

Dated: August 24, 2022

Respectfully Submitted,
**HOLLAND & KNIGHT LLP**
701 Brickell Avenue, Suite 3300
Miami, Florida 33131
Telephone: (305) 374-8500
Facsimile: (305) 789-7799


By:   */s/ Brandon T. White*
Brandon T. White, Esq.
Florida Bar No. 106792
brandon.white@hklaw.com

*Attorneys for Defendants Hyundai Capital America d/b/a Genesis Finance*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 24th day of August, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.  I also certify that the foregoing document is being served this day on counsel on the Service List below via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing electronically

*/s/ Brandon T. White*
Brandon T. White, Esq.

## <u>SERVICE LIST</u>

Darren R. Newhart, Esq.
darren@newhartlegal.com
NEWHART LEGAL, P.A.
14611 Southern Blvd., #1351
Loxahatchee, FL 33470
Tel: (561) 331-1806
Fax: (561) 473-2946

***Counsel for Plaintiff and the Proposed Class***

21

#177359646_v1