# Exhibit 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION

**PATRICIA ROBINSON,**

**Plaintiff,**

**vs.**

**HYUNDAI CAPITAL AMERICA, INC.**
**d/b/a GENESIS FINANCE USA,**

**Defendant.**

**Case No. 0:22-cv-61234-KMW**

### DECLARATION OF NAYELI SALDIVAR IN SUPPORT OF DEFENDANTS'
### MOTION TO COMPEL ARBITRATION

Pursuant to 28 U.S.C. § 1746, I declare as follows:

1.      My name is Nayeli Saldivar, I am over the age of 18, and am competent to make this Declaration.

2.      I am a manager at Hyundai Capital America ("HCA") and have been employed by HCA in various capacities since 2015.

3.      Hyundai Capital America, a California corporation, which does business as Genesis Finance, has its principal place of business at 3161 Michelson Drive, Suite 1900, Irvine, California 92612.  HCA is engaged in the business of acquiring by assignment long-term written motor vehicle leases entered into between motor vehicle dealers, as lessors, and lessees in multiple states. The leases and leased vehicles are assigned by the original lessors/dealers to Hyundai Lease Titling Trust ("HLTT"), a Delaware statutory trust, which holds title as the legal owner of the leases and related vehicles.

4.      HCA is the attorney-in-fact and exclusive servicing agent for the HLTT and HCA is the initial beneficiary of HLTT, and is also the "beneficial owner" of the lease and leased vehicles. HLTT exists solely for the purpose of receiving and holding title for HCA-managed consumer lease accounts, and the titles to the underlying vehicles.  HLTT has no functional employees, and so all actions related to credit extension, lease origination, and account servicing for HLTT-titled lease accounts are performed exclusively by HCA.

5.      I am familiar with the recordkeeping and policies of HCA, and I make this declaration on the basis of my personal knowledge or upon my review of the business records of HCA of which I am a joint custodian, which are maintained in the ordinary course of business, and if called to testify, I could and would competently swear to such facts.  I am further authorized to sign this declaration on behalf of HCA.

6.      In the course of my duties with HCA, I am familiar with the business records maintained by HCA in connection with the lease entered into by which Plaintiff Patricia Robinson ("Plaintiff") for a certain Hyundai Genesis G90 bearing Vehicle Identification Number KMHG54JHXJU046839 (the "Vehicle").  HCA's business records relating to the Lease were made at or near the time of the occurrence of the matters recorded by persons with personal knowledge of the information in the business record or from information transmitted by persons with personal knowledge, were kept in the course of HCA's regularly conducted business activities, and it is the regular practice of HCA to make such records.

7.      On September 8, 2018, Plaintiff, Patricia Robinson, and Rick Case Hyundai entered into a Retail Lease Order agreement, a true and correct copy of which is attached hereto as **Exhibit A**.

8.      The Retail Lease Order contains an Arbitration Provision, which provides that "**EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED**

**BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL**" and "**IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS**." Ex. A at p. 4.

9.      The Arbitration Provision broadly defines the scope of the provision to mean:

> [a]ny claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase, condition of this Vehicle, this Order and Agreement or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Order and Agreement) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action.
>
> *Id.*

10.     The Arbitration Provision further provides that "[a]ny claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action.  You expressly waive any right you may have to arbitrate a class action."  *Id.*

11.     The Arbitration Provision further provides that "[t]his Arbitration Provision shall survive any termination, payoff or transfer of this Order and Agreement." *Id.*

12.     The Arbitration Provision further provides that "[a]ny arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. Seq.) and not by any state law concerning arbitration.  *Id.*

13.     The Retail Lease Order further required a separate Lease Agreement to be contemporaneously executed which "shall be immediately assigned by the Dealer to a bank / finance

company (at face value or greater) which shall then be the creditor to whom Customer shall be obligated under the Lease Agreement." *Id.* at p. 1.

14.     The Retail Lease Order further provides:

> F.   <u>Miscellaneous</u>: This Order shall survive the execution of the Lease Agreement.  To the extent any terms herein conflict with the terms of the Lease Agreement (except as to dollar amounts), this Order shall control and govern.
>
> *Id.*

15.     The Retail Lease Order further provides that "Dealer's obligations and rights hereunder may be assigned as <u>this Order shall inure to the benefit of the Dealer, its successors and/or assigns</u>." *Id*. at ¶  F (emphasis added).

16.     Directly above the Plaintiff's signature lines on the Retail Lease Order, there are two important statements indicating that Plaintiff read and agreed to the Arbitration Provision.  First, there is a conspicuous warning to Plaintiff stating: "**CUSTOMER HAS READ, UNDERSTANDS AND ACCEPTS ALL PROVISIONS OF THIS ORDER AND THE WARRANTY STATEMENT.**" *Id.*

17.     Second, there is an acknowledgement above one of Plaintiff's signatures on the Retail Lease Order which states "**You have read each page of this Order and Agreement, including the arbitration provision on the reverse side, and agree to its terms.  You have received a completely filled in copy of this Order.**" *Id.* at 4.

18.     Also on September 8, 2018, Plaintiff, Patricia Robinson, and Rick Case Hyundai entered into a Motor Vehicle Lease Agreement, a true and correct copy of which is attached hereto as **Exhibit B**.

19.     The Lease Agreement provides that "After you sign this Lease, we will assign it to Hyundai Lease Titling Trust ("HLTT") and the terms "Assignee," "we," "us" and "our" will refer to HLTT and its agents or to any subsequent assignee." Ex. B. at p. 1.

20.     As part of the Lease, Plaintiff acknowledged and authorized "all of [Rick Case Hyundai's] right, title and interest in and to this Lease, the proceeds of this Lease and the Vehicle" to be assigned to HLTT.  *Id*. at p. 4.

21.     The last page of the Lease Agreement provides a class action waiver, which Plaintiff acknowledged and agreed to by placing his initials at the bottom of page 8.  The class waiver provides:

> Q.     **CLASS ACTION WAIVER: TO THE EXTENT PERMITTED BY APPLICABLE LAW, YOU HEREBY WAIVE ANY RIGHT YOU MAY HAVE TO BRING OR PARTICIPATE IN A CLASS ACTION RELATED TO THIS LEASE.**

> *Id.* at p. 8.

22.     Above Plaintiff's signature on page 4 of the Lease Agreement, Plaintiff also acknowledged that:

> **BY SIGNING BELOW, YOU ACKNOWLEDGE THAT: (1) YOU HAVE READ THE ENTIRE LEASE; (2) YOU AGREE TO ALL OF THE PROVISIONS OF THIS LEASE; (3) YOU HAVE RECEIVED A COMPLETELY FILLED IN COPY OF THIS LEASE; AND (4) THIS IS A LEASE AND YOU HAVE NO OWNERSHIP RIGHTS IN THE VEHICLE UNLESS AND UNTIL YOU EXERCISE YOUR OPTION TO PURCHASE THE VEHICLE SET FORTH IN THIS LEASE.**

> *Id.* at p. 4.
> //
>                              //
>                              //
>                              //
>                              //

23.     HCA has not waived the arbitration provisions.

Dated: _Aug 23, 2022_

HYUNDAI CAPITAL AMERICA

*Nayeli Saldivar*

Nayeli Saldivar

# Exhibit A

**RETAIL LEASE ORDER**    DEAL#678853    CUST#: HD678853    DATE 09/08/2018

| CUSTOMER | | | | | | CO-CUSTOMER | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| PATRICIA W ROBINSON | | | | | | JOHNNIE L ROBINSON | | | | |

| | | STATE | ZIP | | | | | | STATE | ZIP |
|---|---|---|---|---|---|---|---|---|---|---|
| | | FL | 33025 | | | | | | FL | 33025 |
| | E-MAIL | | | | | | E-MAIL | | | |

| HOME PHONE | WORK PHONE | | COUNTY | | | HOME PHONE | WORK PHONE | | COUNTY | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | BROWARD | | | | | | BROWARD | |

| STOCK NO. | YEAR | NEW | USED | DEMO | EXECUTIVE | MILEAGE | COLOR | | SALESPERSON 1 | |
|---|---|---|---|---|---|---|---|---|---|---|
| HJU046839 | 2018 | X | | | | 52 | VICTORIA-BLACKWILLIAM KING | | | |

| VIN | | | MAKE | | MODEL | | BODY | | SALESPERSON 2 | |
|---|---|---|---|---|---|---|---|---|---|---|
| KMHGS4JHXJU046839 | | | HYUNDAI | | GENESIS G90 | | 4D | | | |

### NEW / DEMO AND EXECUTIVE VEHICLE DISCLOSURE

The new, demonstrator or executive Vehicle is leased AS-IS and WITH ALL FAULTS. Dealer hereby expressly disclaims all warranties, either express or implied, including any implied warranties of merchantability or fitness for a particular purpose and neither assumes nor authorizes any other person to assume for it any liability in connection with the lease of the Vehicle. The only warranties applying to this Vehicle are those offered by the Manufacturer. The Manufacturer's warranty is not affected by Dealer's disclaimer of warranties. The Customer hereby acknowledges that Dealer has made available "warranty Pre-Sale Information" as disclosed in the Warranty Binders pursuant to the Magnuson-Moss Warranty Act.

Customer: _____ Customer: _____

THIS VEHICLE WAS DELIVERED TO A PREVIOUS PURCHASE... ...

Customer: _____ Customer: _____

### USED VEHICLE DISCLOSURE

This used Vehicle has been previously driven by others and Dealer has not made any representation regarding the Vehicle's history. Customer acknowledges that his representation has been made by any agent of Dealer: (i) regarding the history, condition, prior repair or maintenance, safety system or suitability of the Vehicle; or (ii) that it has or has not ever sustained damages prior to this Order, nor does dealer have the obligation to make any such disclosure. Customer understands that s/he may retain a third-party to provide information regarding the Vehicle's history and that Dealer encourages Customer to do so. Customer may also make arrangements to have the Vehicle inspected by a person of Customer's own choosing. Customer further acknowledges that Customer has not driven this Vehicle and it means Customer's satisfaction or Customer has been offered an opportunity to do so, and has declined. Except as otherwise set forth on the window form (Buyer's Guide), this Vehicle is leased "AS IS and WITH ALL FAULTS," without any warranty and Dealer hereby expressly disclaims all warranties, either express or implied, including any implied warranty of merchantability or fitness for a particular purpose, and neither assumes nor authorizes any person to assume for it any liability in connection with the sale of the vehicle. The manufacturers' warranty if any, has been fully explained. If the Vehicle is designated as a certified vehicle, that indicates that it has qualified for a limited extension of the Manufacturer's original warranty as set forth on the Buyer's Guide. The certified designation does not alter or modify any of these disclaimers and waivers, nor does it mean a Dealer warranty. It also does not mean that the Vehicle, like all used vehicles, will not suffer mechanical breakdowns, nor need maintenance due to wear and tear.

The Vehicle was previously a _____ (enter short-term rental, taxicab, police vehicle, manufacturer buy-back, rebuilt, glider kit, replica or flood vehicle).

Customer: _____ Customer: _____

Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale. Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla orga sin efecto toda disposición en contrario contenida en el contrato de venta.

### LEASE FINANCING/ CREDIT APPROVAL

This is an Order to lease a vehicle. This is not the Lease Agreement. The lease terms will be contained in a Lease Agreement which Customer will be required to execute. The lease financing terms will be a function of, among other things, Customer's credit and market forces. The Lease Agreement may also contain bank / acquisition fees, ancillary products, disposition fees and may require money paid at lease inception and/or a payment to reduce the capitalized cost which may vary from the amounts shown herein. Customer may arrange for lease financing through Dealer or a financing entity of Customer's choosing and Customer may be able to obtain more favorable lease financing from third parties. The Lease Agreement to be entered between Dealer and Customer, unless otherwise indicated in writing by Dealer, shall be immediately assigned by Dealer to a bank / finance company (at face value or greater) which shall then be the creditor to whom Customer shall be obligated under the Lease Agreement. Customer also understands that: (i) the monthly lease payment pursuant to the lease agreement for the lease of an automobile may be negotiated with Dealer, and (ii) Dealer may receive some compensation for providing the lease financing and selling other products and services. Should Customer fail to execute a Lease Agreement, this Order shall be deemed terminated by Dealer without further notice. Similarly, Dealer may terminate this Order if Dealer cannot obtain credit approval for Customer or if Dealer is unable to sell Customer's Lease to a financial institution at face value or greater (these acts shall be collectively referred to as "Leasing Approvals"). Dealer's right of termination cannot be waived unless in writing. Leasing Approvals are not typically obtained at the time of the Vehicle's delivery and are beyond Dealer's control. Should Customer take delivery of the Vehicle prior to Dealer's obtaining the Leasing Approvals, Customer understands and acknowledges that pending the Leasing Approvals, delivery of the Vehicle to Customer serves as a convenience to Customer only and Customer does not have, nor will acquire, any rights or interests in the Vehicle by such delivery except Dealer's permission to use it, which permission can be revoked, requiring the Vehicle's immediate return to Dealer in the same condition as it existed when delivered to Customer. In the event of the return of the Vehicle, Customer agrees to pay Dealer the amount of any depreciation, repair costs and any damage to the Vehicle while it is in the possession of the Customer. Customer agrees that in no event shall the vehicle be physically removed more than one-hundred (100) miles from the County in which Dealer is located until the Leasing Approvals are obtained. Additionally, the obtaining of the Leasing Approvals are a condition precedent to the enforcement and validity of the Lease Agreement.

Customer: _____ Customer: _____

| LEASE INFORMATION | | |
|---|---|---|
| Cash Price of Vehicle | | 69812.43 |
| Extended Service Plan | | N/A |
| Accessories /Options | | |
| Acquisition Fee (fin) | | 750.00 |
| | | N/A |
| | | N/A |
| | | N/A |
| | | N/A |
| HPP Wear and Tear | | N/A |
| SUBTOTAL CAPITALIZED COST | | 70562.43 |
| Predelivery Service Charge** | | 699.00 |
| Electronic Registration Filing Fee** | | 132.95 |
| ** These charges represent costs and profit to the dealer for items such as inspecting, cleaning, and adjusting vehicles, and preparing documents related to the sale. | | |
| Florida New Tire Fee & Lead Acid Battery Fee | | 6.50 |
| N/A | | N/A |
| Sales Tax _N/A% | | N/A |
| Rental Surcharge | | 60.00 |
| County Tax | | |
| Lemon Law – Warranty Enforcement Act (New Cars Only) | | 2.00 |
| Florida Title, Registration and License Fees (Now ____ Taxes ____) □ If box is checked this is an estimate | | 107.00 |
| THIRD PARTY TAG AGCY | | 42.00 |
| Trade Pay-off / Balance on Prior Lease | | N/A |
| Pre-owned Allowance &/or Discount | | 10027.59 |
| TOTAL CAPITALIZED COST | | 56492.84 |
| Net Trade Equity Applied Towards Lease inception costs and/or capitalized cost reduction | | 4042.00 |
| Additional Amounts Paid Towards Lease inception costs and/or capitalized cost reduction | | N/A |
| Rebates | | 10500.00 |

| TRADE-IN 1 | | | | | |
|---|---|---|---|---|---|
| ☐ Private Trade | ☐ Lease Walk Away | | | | |
| Year 2014 | Make HYUNDAI | Model EQUUS | | Color BROWN | |
| VIN KMHGH4JHXEU083225 | | Mileage 46744 | | | |
| 1ST Lien to: CHASE | | Amount | 15958.00 | Good Thru | |
| 2ND Lien to: | | Amount | | Good Thru | |
| Authorized by: | | | | | |

| TRADE-IN 2 | | | | | |
|---|---|---|---|---|---|
| ☐ Private Trade | ☐ Lease Walk Away | | | | |
| Year | Make | Model | | Color | |
| VIN | | Mileage | | | |
| 1ST Lien to: | | Amount N/A | | Good Thru | |
| 2ND Lien to: | | Amount | | Good Thru | |
| Authorized by: | | | | | |

Unless specifically identified by Customer in writing and signed by the parties, Customer represents and warrants the following regarding the Trade-In: (i) it was not involved in an accident; (ii) having no knowledge of any body or major engine repair; and (iii) it was not previously a police vehicle, a taxicab, a short-term lease (less than 12 months), a car returned from a rental vehicle, a flood damaged, frame damaged, salvaged or a rebuilt vehicle, and the title to the trade-in has not been branded as such. Subject to the terms and conditions of this Order, Customer authorizes Dealer to immediately sell the Trade-In whether or not the Leasing Approvals have been obtained. Customer agrees that in the event any inquiry reveals any undisclosed lien on the Trade-In, and/or the actual payoff for the disclosed lien on the Trade-In exceeds the Customer's statement of pay-off, Customer will cause such previously unknown lien(s) and/or the underpaid amount of the disclosed lien(s) to be satisfied within 72 hours of Dealer's notice to Customer in writing. If the vehicle(s) listed is a Lease Walk Away, Customer understands that Dealer's agreement to take possession of it is for convenience only and Dealer assumes no responsibility for its condition or any other obligation of Customer with respect to that lease such as remaining payments, excess miles or damage to vehicle unless otherwise indicated in writing and signed off by Dealer.

Customer: _____ Customer: _____

Customer Initials _____ Co-Customer Initials _____    Page 1 of 4

ILAW FORM NO. FADA-LDVI-ARB_8 (REV 4/18)
© 2005 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR SUITABILITY. THIS FORM IS PURCHASED OR OTHERWISE PROVIDED "AS IS" AND IS LICENSED, NOT SOLD.

**DEALER'S RIGHT TO CANCEL - If Customer and Co-Customer sign here, the provisions of the Dealer's Right to Cancel section below, which gives the Dealer the right to cancel if Dealer is unable to assign a Lease Agreement signed with this Order within ___30___ days, will apply. If you fail to return the vehicle within 48 hours after receipt of the notice of cancellation, you agree to pay Dealer a charge of $ 75.00 per day from the date of cancellation until the vehicle is returned or repossessed.**

X _Latisha W. Robinson_  Customer Signs          X _Johnnie L Robinson_  Co-Customer Signs

**Dealer's Right to Cancel**

a. Dealer agrees to deliver the Vehicle to you on the date the Lease Agreement is signed by Dealer and you. You understand that it may take a few days for Dealer to verify your credit, locate financing for you on the exact terms shown in the Lease Agreement, and assign the Lease Agreement to a financial institution. You agree that Dealer has the number of days stated in this Order to assign the Lease Agreement. If Dealer is unable to assign the Lease Agreement within this time period to any one of the financial institutions with whom Dealer regularly does business under an assignment acceptable to Dealer, Dealer may cancel the Lease Agreement. Dealer's right to cancel the Lease Agreement ends upon assignment of the Lease Agreement Contract.

b. If Dealer elects to cancel per Paragraph a. above, Dealer will give you written notice (or in any other manner in which actual notice is given to you). In that event, you may have the option of negotiating and signing a new Lease Agreement with different financing terms (for example, a larger down payment, a higher rent charge, a required cosigner, etc.) or you may pay with alternate funds arranged by you.

c. Upon receipt of the notice of cancellation, you must return the Vehicle to Dealer within 48 hours in the same condition as when leased other than reasonable wear for the time you had it. Except as described below, Dealer must give you back all consideration Dealer has received from you in connection with the Lease Agreement.

d. If you do not return the Vehicle within 48 hours after receipt of the notice of cancellation, you agree that Dealer may use any lawful means to take it back (including repossession if done peacefully) and you will be liable for all expenses incurred by Dealer in taking the Vehicle from you, including reasonable attorney's fees. If you fail to return the Vehicle within 48 hours after receipt of the notice of cancellation, you agree to pay Dealer the charge shown in the Dealer's Right to Cancel provision on page 2 of this Order as may be provided in the Lease Agreement for each day you do not return the Vehicle after receipt of the notice of cancellation.

e. While the Vehicle is in your possession, all terms of the Lease Agreement, including those relating to use of the Vehicle and insurance for the Vehicle, are in full force and you assume all risk of loss or damage to the Vehicle. You must pay all reasonable costs for repair of any damage done to the Vehicle while the Vehicle is in your possession. Dealer may deduct from any consideration due to you under paragraph c. above Dealer's reasonable costs to repair the Vehicle and any daily charges you incur if you fail to return the Vehicle within 48 hours after the receipt of the notice of cancellation. If Dealer cancels the Lease Agreement, the terms of this Dealer's Right to Cancel provision (including those on page 2 of this Order and as provided in the Lease Agreement) remain in effect even after you no longer have possession of the Vehicle.

Customer Initials _LMR_    Co-Customer Initials _____    Page 2 of 4

**ILAW** FORM NO. FADA-LOJI-ARB_8 (REV. 4/15)
© 2015 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR
FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.          43659*1*RCS-FI

## TERMS AND CONDITIONS

A. **Definitions:** As used in this Order the terms: (a) "Customer" shall mean the party(ies) acquiring the Vehicle; (b) "Vehicle" shall mean the vehicle which is subject of this Order; (c) "Manufacturer" shall mean the manufacturer that manufactured the Vehicle; (d) "Trade-In" shall mean the automobile(s), but not a Lease Walk Away, conveyed by Customer to Dealer and described on page 1 of this Order, which is being applied towards the acquisition costs of the Vehicle; (e) "ACV" shall mean the actual cash value of the Trade-In, as determined by the National Auto Research Black Book Official Used Car Market Guide based on its condition, current as of the date of Customer's delivery of the Trade-In to Dealer, or if the Trade-In is too old to be in such guide, the average auction price at the time of this Order at the Central Florida Automobile Auctions (open only to licensed automobile dealerships) of automobiles of similar equipment, condition model and year as the Trade-In; (f) "Pre-owned Allowance &/or Discount" as identified on page 1 of this Order is the sum of the ACV plus any discount and/or credit given by Dealer towards the price of the Vehicle; (g) "Demonstrator" (as defined by Chapter 320, Florida Statutes), commonly referred to as "Demo" will be considered a new Vehicle; and (h) "executive vehicle" refers to a vehicle used exclusively by Manufacturer, its subsidiary, or a dealer for the commercial or personal use of the manufacturer's, subsidiary's, or dealer's employees and is considered a new Vehicle; and (i) "Lease Agreement" means an agreement by which the Vehicle is provided on a rental payment basis, subject to agreed upon terms and conditions. Terms in general will be interpreted based on Florida statutory definitions, if any.

B. **Vehicle:** Customer must accept and take delivery of Vehicle within 48 hours from its availability. Failure by Customer to do so shall constitute a material breach of this Order. By taking possession of Vehicle, Customer, unless otherwise confirmed in writing by Dealer, acknowledges that Vehicle has no defects, flaws or irregularities that would be detected during a visual examination and that no equipment or option is missing. Dealer shall not be liable for failing to deliver or for any delay in delivery where such failure or delay is due, in whole or in part, to any cause beyond the control or without the fault or negligence of Dealer. Manufacturer has reserved the right to change the design of any new motor vehicle, chassis and any accessories or parts thereof at any time without notice and without obligation to make the same or any similar change upon any motor vehicle, chassis, accessories or parts thereof previously purchased by or shipped to Dealer or being manufactured or sold in accordance with Dealer's contracts. In the event of any such change by Manufacturer, Dealer shall have no obligation to Customer to make the same or any similar change in any motor vehicle, chassis, accessories or parts thereof covered by this Order either before or subsequent to delivery thereof to Customer. Dealer shall have no duty to disclose intended design changes by Manufacturer. Line item(s) of optional Dealer installed accessories, equipment listed on page 1 of this Order, service contracts or extended service policy shall not be construed as having been produced, supplied, issued by or installed by Manufacturer. With respect to a new Vehicle, all equipment and options existing at the time the Vehicle was shipped by the Manufacturer were produced by the Manufacturer and/or its world wide suppliers. Items installed thereafter may not be products of the Manufacturer. Neither the Manufacturer, nor Dealer warrant these items. Dealer does not warrant or guarantee the mileage indicated on the used Vehicle is accurate or that it may not have been altered by persons in possession prior to Dealer. Customer acknowledges that new vehicles may be delivered by the Manufacturer with some in-transit damage and acknowledges that sometimes new vehicles are damaged from being moved on or around the Dealer's property. Customer acknowledges that Customer may not be advised, except as required by Florida Statutes, if such damage occurs to a new Vehicle and is repaired.

C. **Trade-In:** Customer grants, bargains, conveys, sells, assigns and transfers to Dealer all of Customer's right, title and interest in the Trade-In. Customer fully warrants title to the Trade-In and that it is free and clear of all liens and encumbrances except as otherwise noted herein and will defend same against the claims of all persons whomsoever. Customer agrees to deliver to Dealer satisfactory evidence of title to any Trade-In at the time of its delivery to Dealer. If Customer fails to pay any undisclosed or understated liens, Customer shall be in material breach of this Order. In the event that the Trade-In has more mileage than represented by Customer or any of Customer's representations regarding the Trade-In are false, Customer shall be obligated to pay Dealer the difference between the ACV of the Trade-In as represented and the correct ACV within 10 days from written demand. Dealer may recover all consequential and incidental damages arising from Customer's breach of any warranty regarding the Trade-In. Dealer may reappraise the Trade-In if before its possession is delivered to Dealer, it is damaged or parts or accessories have been removed. If such reappraised value results in a "Pre-owned Allowance &/or Discount" that is lower than the allowance shown hereon, Customer may, if dissatisfied therewith, terminate this Order.

D. **Rebates / Payment / Incentives:** Dealer has no obligation to disclose to Customer the availability of any incentives or rebate. All incentives and rebates shown on page 1 hereof are hereby assigned to Dealer. If Customer is receiving a discount or credit based on a specific relationship with the Manufacturer, Customer must furnish all necessary documentation, information, verification and certificates within 30 days. In the event that Customer fails to timely do so or in the event any moneys to be paid at inception are not paid or non-negotiable (i.e., NSF), Customer shall be in breach of this Order.

E. **Mandatory Mediation:** Before any party institutes an action, other than one that is expressly outside the scope of the arbitration provision, the parties must first mediate the dispute before a court certified mediator, which mediation shall be conducted in the county where the Dealer is situated. The parties shall jointly select the mediator and equally divide the cost of the mediation. The parties shall use good faith in selecting the mediator and participating in the mediation.

F. **Miscellaneous:** This Order shall survive the execution of the Lease Agreement. To the extent any terms herein conflict with the terms of the Lease Agreement (except as to dollar amounts), this Order shall control and govern. Waste tire fees and lead-acid battery fees, if applicable and if included in the price of Vehicle, are payable to the State of Florida, Department of Revenue. Dealer is not the agent of the Manufacturer. This Order cancels and supersedes any prior contract and comprises the complete and exclusive statement of the terms of the Order relating to the subject matters covered hereby, and constitutes the entire Order between the parties. There are no representations or contracts between the parties except as set forth herein or contemporaneously executed. This Order may not be changed, modified or extended except by an instrument in writing and signed by the parties. In the event this Order or any other contract or document executed by Customer contains a clerical or computation error or if additional documentation is necessary in order to effectuate the parties' intent, Customer agrees to cooperate with the execution of such (corrected) documentation and produce the additional documentation. Should Customer unreasonably refuse to give such cooperation, Customer shall be in material breach of this Order. By execution of this Order, Customer certifies being 18 years old or older. Customer has read, understands and accepts all provisions of this Order and the Warranty Statement. The parties enter into this Order freely and voluntarily in the absence of any duress or coercion. Customer agrees to pay, unless prohibited by law, any and all taxes applicable to this transaction, regardless of which party may have the primary tax liability therefor. The Florida Title, Registration and License fees are the result of a highly complicated formula. As a result, the amounts charged may only be estimates. If the amount of taxes and government fees identified on page 1 hereof is less than the correct amount, Customer shall be obligated to Dealer for such difference. If the amount charged exceeds the correct amount, Dealer shall refund to Customer the difference. Dealer's obligations and rights hereunder may be assigned as this Order shall inure to the benefit of Dealer, its successors and/or assigns. All paragraph headings set forth in this Order are intended for convenience only and shall not control or affect the meaning or construction of the provisions hereof. All remedies afforded in this Order shall be taken and construed as cumulative, that is, in addition to every other remedy provided therein or by law. The failure of Dealer to enforce at any time any of the provisions of this Order, or to exercise any option herein provided, or to require at any time performance by Customer of any of the provisions hereof, shall in no way be construed to be a waiver or create an estoppel from enforcement of such provisions, nor in any way to affect the validity of this Order or any part thereof, or the right of Dealer to thereafter enforce each and every such provision, or to seek relief as a result of the prior breach. This Order is an essential document to any claim by Customer against Dealer in connection with the leasing of the Vehicle.

G. **Termination:** In the event this Order is terminated by either Dealer or Customer as permitted by this Order, including, but not limited to the failure to obtain Lease Approvals: (a) Dealer will be entitled to the immediate return of the Vehicle and Customer shall be obligated to return the Vehicle to Dealer within 24 hours of the date of termination; and (b) Customer shall be liable to Dealer for $1.00 per mile used over and above 25 miles per day average, plus any wear, tear or damage to the Vehicle and diminution in value. In the event that the Vehicle is not returned within this time period, such failure will constitute a material breach of this Order and Dealer shall have those remedies as described in paragraph "F" above. Otherwise, Customer will be entitled to the return of their inception money subject to a lien in favor of Dealer for any amount due it hereunder. If a Trade-In was applied towards the Vehicle's acquisition, it shall be returned to Customer upon payment of a reasonable charge for storage, lien payoffs and repairs (if any) or, if it has been already sold by Dealer, Customer shall be entitled to the "Net Trade-in Proceeds", calculated as follows: the ACV, less the sum of (i) liens, (ii) costs incurred by Dealer to repair and/or ready it for sale, and (iii) a selling commission equal to 15% of the ACV. If the Net Trade-in Proceeds is negative, then Customer shall be obligated to Dealer for that amount.

## ARBITRATION PROVISION
### PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS

1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.
2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.
3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this Vehicle, this Order and Agreement or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Order and Agreement) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action, if federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose the American Arbitration Association, 1633 Broadway, 10th Floor, New York, New York 10019 (www.adr.org), or any other organization to conduct the arbitration subject to our approval. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law and the applicable statute of limitations. The arbitration hearing shall be conducted in the federal district in which you reside unless the Seller-Creditor is a party to the claim or dispute, in which case the hearing will be held in the federal district where this Order and Agreement was executed. We will pay your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $5000, unless the law or the rules of the chosen arbitration organization require us to pay more. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims is frivolous under applicable law. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Provision, then the provisions of this Arbitration Provision shall control. Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration. Any award by the arbitrator shall be in writing and will be final and binding on all parties, subject to any limited right to appeal under the Federal Arbitration Act.

You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies, such as repossession, or by filing an action to recover the Vehicle, to recover a deficiency balance, or for individual injunctive relief. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Provision shall survive any termination, payoff or transfer of this Order and Agreement. If any part of this Arbitration Provision, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Provision shall be unenforceable.

DO NOT SIGN BELOW UNTIL YOU HAVE READ AND UNDERSTOOD ALL OF THE TERMS AND CONDITIONS CONTAINED ON ALL PAGES OF THIS ORDER. BY SIGNING BELOW, YOU ACKNOWLEDGE THAT EXCEPT AS OTHERWISE PROVIDED IN WRITING, THIS REPRESENTS THE ENTIRE AGREEMENT AND THAT YOU HAVE NOT RELIED ON ANY ORAL REPRESENTATION, PROMISE OR AGREEMENT NOT CONTAINED WITHIN THIS WRITTEN CONTRACT. THIS ORDER IS NOT BINDING UNTIL EXECUTED BY DEALER'S MANAGER. CUSTOMER REPRESENTS AND WARRANTS THAT ALL INFORMATION PROVIDED TO DEALER IN CONNECTION WITH THIS TRANSACTION IS COMPLETE AND ACCURATE. CUSTOMER HAS READ, UNDERSTANDS AND ACCEPTS ALL PROVISIONS OF THIS ORDER AND THE WARRANTY STATEMENT.

Section 501.98, Florida Statutes, requires that, at least 30 days before bringing any claim against a motor vehicle dealer for an unfair or deceptive trade practice, a consumer must provide the dealer with a written demand letter stating the name, address, and telephone number of the consumer; the name and address of the dealer; a description of the facts that serve as the basis for the claim; the amount of damages; and copies of any documents in the possession of the consumer which relate to the claim. Such notice must be delivered by the United States Postal Service or by a nationally recognized carrier, return receipt requested, to the address where the subject vehicle was purchased or leased or where the subject transaction occurred, or an address at which the dealer regularly conducts business.

X _____   X _____
**Customer's Signature**   **Co-Customer's Signature**

This Order and Agreement represents the final agreement between the parties related to the sale and may not be contradicted by evidence of prior, contemporaneous, or subsequent oral agreements of the parties.

X _____   X _____
**Customer's Signature**   **Co-Customer's Signature**

You have read each page of this Order and Agreement, including the arbitration provision above, and agree to its terms. You have received a completely filled in copy of this Order.

Customer Signs: X _____   Co-Customer Signs: X _____

Accepted by Dealer: X _____   By: _____

Customer Initial _____   Co-Customer Initials _____   Page 4 of 4

# Exhibit B

# GENESIS FINANCE

## Motor Vehicle Lease Agreement

DEAL# 678853
CUST# HD678853
STK# HJU046839

Call us toll-free at 84-GENESIS-7 (844-363-7477)

Lease Date: 09/08/2018

## 1. PARTIES AND VEHICLE DESCRIPTIONS

### LESSEE:

Lessee: **PATRICIA W ROBINSON**

Billing Address:
_Address_
_City_  _State_  _Zip_

### CO-LESSEE:

Co-Lessee: **JOHNNIE L ROBINSON**

Billing Address: ☐ Check box if same as Lessee
_Address_
_City_  _State_  _Zip_

### LESSOR (Dealer):

Dealer: **RICK CASE HYUNDAI**

Address: **925 N STATE ROAD 7**
_Street Address_
**PLANTATION**  **FL**  **33317**
_City_  _State_  _Zip_

### GARAGING ADDRESS:

☐ Check box if same as Lessee's Billing Address
☐ Check box if same as Co-Lessee's Billing Address
N/A
_(Street Address - No P.O. Boxes)_
**N/A**  **N/A**  **N/A**
_City_  _State_  _Zip_

### LEASED VEHICLE

☒ New  ☐ Used

| 2018 | HYUNDAI | GENESIS G90 |
|---|---|---|
| Year | Make | Model |

| 52 | KMHG54JHXJU046839 |
|---|---|
| Odometer | VIN |

☐ If checked, the Vehicle's primary intended use is for a Business, Commercial or Agricultural purpose.

### DESCRIPTION OF TRADE-IN VEHICLE

| 2014 | HYUNDAI | EQUUS |
|---|---|---|
| Year | Make | Model |

| Gross Agreed Upon Trade-in Allowance | $ | 20000.00 |
|---|---|---|
| Outstanding Prior Credit or Lease Balance | | |
| (To Be Paid by Dealer/Lessor) | $ | 15958.00 |
| Net Trade-in Allowance (if less than 0, then enter 0) | $ | 4042.00 |

Lessee and Co-Lessee ("you," "your" and together the "Lessee") each agree to lease the Leased Vehicle described above, including all equipment, parts and accessories (the "Vehicle") from Lessor ("we," "us" and "our") according to the terms and conditions of this Motor Vehicle Lease Agreement ("Lease"). Each of you who executes this Lease will be individually liable to us for all Lease obligations and for the entire amount owing under this Lease. After you sign this Lease, we will assign it to Hyundai Lease Titling Trust ("HLTT") and the terms "Assignee," "we," "us" and "our" will refer to HLTT and its agents or us to any subsequent assignee.

## FEDERAL CONSUMER LEASING ACT DISCLOSURES

### 2. AMOUNT DUE AT LEASE SIGNING OR DELIVERY (Itemized below)*

$ 16559.95

### 3. MONTHLY PAYMENTS

A. Your first Monthly Payment of $ 785.35 is due on 09/08/2018 followed by 35 payments of $ 785.35 due on the 8th of each month, beginning on 10/08/2018.

B. The Total of your Monthly Payment is
$ 28272.60

### 4. OTHER CHARGES (Not part of your Monthly Payment)

A. Turn-in Fee (if you do not purchase the Vehicle) ..... $ 400.00

B. N/A ..... $ N/A

C. Total ..... $ 400.00

### 5. TOTAL OF PAYMENTS

(The amount you will have paid by the end of the Lease)

$ 44447.20

## 6. ITEMIZATION OF AMOUNT DUE AT LEASE SIGNING OR DELIVERY

### A. Amount Due at Lease Signing or Delivery:

| (1) | Capitalized Cost Reduction | $ | 14069.59 |
|---|---|---|---|
| (2) | Sales/Use Tax on Capitalized Cost Reduction | $ | 601.65 |
| (3) | First Monthly Payment | $ | 785.35 |
| (4) | Refundable Security Deposit | $ | N/A |
| (5) | Acquisition Fee | $ | N/A |
| (6) | Initial License, Title and Registration Fees | $ | 107.00 |
| (7) | Sales/Use Tax | $ | 53.91 |
| (8) | Rental Surcharge ·$0.00 / Tire/Battery Fees  $.50 / MVWEA  2.00 | $ | 68.50 |
| (9) | Dealer Fee 699.80 / ELECTRONIC FILING FEE 132.95 | $ | 831.95 |
| (10) | THIRD PARTY TAG AGCY | $ | 42.00 |
| (11) | **TOTAL** | $ | 16559.95 |

### B. How the Amount Due at Lease Signing or Delivery will be Paid:

| (1) | Net Trade-in Allowance | $ | 4042.00 |
|---|---|---|---|
| (2) | Rebates and Noncash Credits | $ | 10500.00 |
| (3) | Amount to Be Paid in Cash | $ | 2017.95 |
| (4) | N/A | $ | N/A |
| (5) | **TOTAL** | $ | 16559.95 |

## 7. YOUR MONTHLY PAYMENT IS DETERMINED AS SHOWN BELOW

A. **Gross Capitalized Cost.** The agreed upon value of the Vehicle ($ _____ 69812.43 _____ ) and any items you pay over the Lease Term (such as service contracts, insurance, and any outstanding prior credit or lease balance) ..............................................$ **70562.43**

B. **Capitalized Cost Reduction.** The amount of any Net Trade-in Allowance, Rebate, Noncash Credit, or Cash you pay that reduces the Gross Capitalized Cost..............................................................................................................................– $ **14069.59**

C. **Adjusted Capitalized Cost.** The amount used in calculating your Base Monthly Payment .............................................= $ **56492.84**

D. **Residual Value.** The value of the Vehicle at the end of the Lease used in calculating your Base Monthly Payment............................= $ **32051.80**

E. **Depreciation and any Amortized Amounts.** The amount charged for the Vehicle's decline in value through normal use and for other items paid over the Lease Term ..............................................................................................................= $ **24441.04**

F. **Rent Charge.** The amount charged in addition to the Depreciation and any Amortized Amounts .......................................+ $ **2231.36**

G. **Total of Base Monthly Payments.** The Depreciation and any Amortized Amounts plus the Rent Charge.........................= $ **26672.40**

H. **Lease Payments.** The number of payments in your Lease .............................................................................................÷ **36**

I. **Base Monthly Payment** ...........................................................................................................................................= $ **740.90**

J. **Monthly Sales/Use Tax** ...........................................................................................................................................+ $ **44.45**

K. **Other (specify):** NA _____ + $ **N/A**

L. **Total Monthly Payment** ...........................................................................................................................................= $ **785.35**

---

**EARLY TERMINATION. You may have to pay a substantial charge if you end this Lease early. The charge may be up to several thousand dollars.** The actual charge will depend on when the Lease is terminated. The earlier you end the Lease, the greater this charge is likely to be.

## 8. EXCESS WEAR AND USE

You may be charged for excess wear based on our standards for normal use and for mileage in excess of _____ **10,000** _____ miles per year (prorated based on the number of months in the Lease Term) at the rate of 25¢ per mile. No rebate or credit will be paid to you if the mileage is less than the specified amount.

☐ If this box is checked, you have purchased an additional _____ **N/A** _____ miles per year (prorated based on the number of months in the Lease Term), at 20¢ per mile, which is included in your Monthly Payment. No rebate or credit will be paid to you if the end of term mileage is less than the specified amount.

## 9. PURCHASE OPTION AT END OF LEASE TERM

You have an option to purchase the Vehicle from us at the scheduled end of the Lease Term, **AS IS, WHERE IS,** from us or a party we designate, (See Section 23), for the Residual Value on line 7D above ("Purchase Price") plus a **Purchase Option Fee of $ _____ 1479.00 _____**. You are also responsible for any official fees, such as those for taxes, tags, license and registration. *Please see Section 23 of this Lease for additional terms and conditions.*

## 10. OTHER IMPORTANT TERMS

See the entirety of this Lease (8 pages total) for additional information on early termination, purchase options, maintenance responsibilities, warranties, late and default charges, insurance, and any security interest, if applicable.

**Notice:** If you do not meet your Lease obligations, you may lose the Vehicle.
**AK, OR and SD Notice:** If this Lease is for a consumer purpose, then this Lease is **CONSUMER PAPER.**

### 11. ITEMIZATION OF GROSS CAPITALIZED COST

A. Agreed Upon Value of Vehicle.......................................$ **69812.43**

B. Sales/Use Tax .............................................................$ **N/A**

C. License, Title and Registration Fees .............................$ **N/A**

D. Outstanding Prior Credit or Lease Balance....................$ **N/A**

E. Dealer Documentation/Service Fee** ...........................$ **N/A**

F. N/A _____ .$ **N/A**

G. N/A _____ .$ **N/A**

H. N/A _____ .$ **N/A**

I. N/A _____ .$ **N/A**

J. N/A _____ .$ **N/A**

K. Acquisition Fee ............................................................$ **750.00**

L. **Total = Gross Capitalized Cost**..................................$ **70562.43**

** **NOTICE TO MISSISSIPPI LESSEES: A DOCUMENT/SERVICE FEE IS NOT AN OFFICIAL FEE AND IS NOT REQUIRED BY LAW. HOWEVER, IT MAY BE CHARGED TO A BUYER/LESSEE FOR THE PREPARATION, HANDLING AND PROCESSING OF DOCUMENTS AND THE PERFORMING OF SERVICES RELATED TO THE SALE OR LEASE OF A MOTOR VEHICLE AND MAY INCLUDE DEALER PROFIT. THIS NOTICE IS REQUIRED BY REGULATION OF THE MISSISSIPPI MOTOR VEHICLE COMMISSION.**

### 12. TERM AND SCHEDULED MATURITY DATE

The Lease Term is _____ **36** _____ months ("Lease Term").

The Scheduled Maturity Date: **09/08/2021** _____.

*[This area intentionally left blank.]*

## 13. OPTIONAL INSURANCE AND OTHER PRODUCTS

You do not have to purchase any optional protection products or services listed below to enter into this Lease, and they are not a factor in our credit decision to lease the Vehicle to you. If you have initialed below, it means you want the described product/service and have reviewed the separate contract for the product/service(s) which describes its terms and conditions. Coverage under any of the product(s)/service(s) you have purchased below may be subject to approval by the provider of such product(s)/service(s). If the price of any products and/or services (whether defined below or otherwise) you purchased at the time of entering into this Lease is not set forth in the Itemization of Gross Capitalized Cost section on Page 2, you will pay for them upon Lease signing or delivery. We may receive a portion of the price of any optional products or services you buy.

☐ Other: N/A  _____ Premium/Price: $ _____ N/A
Product Description

| N/A | N/A | N/A | / | N/A |
| Provider | Term (in Months or Years) | Lessee | | Co-Lessee |
| | | | | Initials |

☐ Other: N/A  _____ Premium/Price: $ _____ N/A
Product Description

| N/A | N/A | N/A | / | N/A |
| Provider | Term (in Months or Years) | Lessee | | Co-Lessee |
| | | | | Initials |

☐ Other: N/A  _____ Premium/Price: $ _____ N/A
Product Description

| N/A | N/A | N/A | / | N/A |
| Provider | Term (in Months or Years) | Lessee | | Co-Lessee |
| | | | | Initials |

☐ Other: N/A  _____ Premium/Price: $ _____ N/A
Product Description

| N/A | N/A | N/A | / | N/A |
| Provider | Term (in Months or Years) | Lessee | | Co-Lessee |
| | | | | Initials |

☐ Other: N/A  _____ Premium/Price: $ _____ N/A
Product Description

| N/A | N/A | N/A | / | N/A |
| Provider | Term (in Months or Years) | Lessee | | Co-Lessee |
| | | | | Initials |

☐ Other: N/A  _____ Premium/Price: $ _____ N/A
Product Description

| N/A | N/A | N/A | / | N/A |
| Provider | Term (in Months or Years) | Lessee | | Co-Lessee |
| | | | | Initials |

☐ Other: N/A  _____ Premium/Price: $ _____ N/A
Product Description

| N/A | N/A | N/A | / | N/A |
| Provider | Term (in Months or Years) | Lessee | | Co-Lessee |
| | | | | Initials |

☐ Other: N/A  _____ Premium/Price: $ _____ N/A
Product Description

| N/A | N/A | N/A | / | N/A |
| Provider | Term (in Months or Years) | Lessee | | Co-Lessee |
| | | | | Initials |

## 14. ESTIMATED OFFICIAL FEES AND TAXES

The total estimated amount you will pay for official and license fees, registration, title and taxes (including personal property taxes) over the Lease Term, whether included with your Monthly Payment or assessed otherwise, is $ _____ 2645.26 _____ . The actual total of fees and taxes may be higher or lower than this estimate depending on the tax rates in effect or the value of the Vehicle at the time a fee or tax is assessed.

## 15. WARRANTIES

If the Vehicle is new, the Vehicle is covered by the manufacturer's standard new car warranty. If the Vehicle is not new, there is no express warranty on the Vehicle unless indicated below:

☐ Used vehicle limited warranty provided by the manufacturer.

☐ Remainder of standard new vehicle limited warranty provided by the manufacturer.

LESSOR LEASES THE VEHICLE TO YOU "AS IS." EXCEPT AS PROVIDED IN THIS LEASE (AND UNLESS PROHIBITED BY LAW), WE MAKE NO EXPRESS OR IMPLIED WARRANTIES OR REPRESENTATIONS AS TO THE VEHICLE'S (OR ANY OF ITS PARTS OR ACCESSORIES) CONDITION, MERCHANTABILITY, SUITABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE AND WE MAKE NO OTHER REPRESENTATIONS OR WARRANTIES WHATSOEVER. If this Lease is entered into in Kansas, Maine, Massachusetts, Mississippi, Vermont (if the Vehicle is new) or West Virginia, Lessor does not disclaim any implied warranty of merchantability or fitness for any particular purpose.

## 16. INSURANCE VERIFICATION

You must maintain the insurance coverage described in Section 20A of this Lease. You affirm that the following insurance coverage is in force as of the Lease Date:

Insurance Provider: **GEICO**
Policy Number: ▇▇▇▇▇▇
Effective Date: 09/08/2018
Expiration Date: 03/08/2019

Agent's Name: **DIRECT**
Agent's Address: ONE GEICO PLAZA   20810 20810
Agent's Phone Number: 800-207-7847
Initials of Dealer Employee who verified insurance coverage X _____

You must instruct your insurance agent to add as an additional loss payee, and send the Insurance Policy, Endorsement or Certificate to:

Hyundai Lease Titling Trust
PO Box 20809
Fountain Valley, CA 92728-0809

---

NOTICE TO MICHIGAN LESSEES: The Adjusted Lease Balance upon early termination (see Section 22) may be different than the actual cash value of the Vehicle as determined by your automobile insurer. Unless we agree to waive your liability upon a Total Loss of the Vehicle (see Section 25B), then you will be responsible for the difference between the Adjusted Lease Balance and the Vehicle's actual cash value as determined by the insurer.

Lessee's Initials _____ / Co-Lessee's Initials _____ .

---

Form No. LSE GF 2 (Rev. 11/2017)  Electronic ©2017, Hyundai Capital America
65646*1*RC5-FI

Lessee Initials X _____   Co-Lessee Initials X _____

Page 3 of 8
09/08/2018  07:02 pm

**NOTICE TO FLORIDA LESSEES: The valid and collectible liability insurance and personal injury protection insurance of any authorized rental or leasing driver is primary for the limits of liability and personal injury protection coverage required by Sections 324.021(7) and 627.736, Florida Statutes.**

### 17. LEASE MODIFICATIONS

Any change to this Lease must be in a writing signed by us and you, except that (a) we may agree to requests for extensions, deferrals and due date changes (if offered by us) by phone and confirmed by us in writing, unless the law requires a signed written agreement, and (b) we may, in our sole discretion, modify any term(s) of this Lease without your signature upon written notice to you of the modified term(s), if the modified term(s) are at least as favorable to you as the existing terms of this Lease. Your failure to object within 10 days after we send you a modification notice shall be deemed your consent to the modified term(s). No other oral changes are binding..

Lessee Signature X _Patricia W. Robinson_   Co-Lessee Signature X _Johnnie L Robins_

### 18. NOTICES AND SIGNATURES

BY SIGNING BELOW, YOU AGREE THAT GENESIS FINANCE MAY OBTAIN ONE OR MORE CREDIT REPORTS OR OTHER CONSUMER REPORTS ABOUT YOU FOR USE IN CONNECTION WITH ATTEMPTING TO COLLECT AMOUNTS OWED UNDER THIS LEASE, ENFORCING THIS LEASE OR SELECTING YOU TO RECEIVE MARKETING SOLICITATIONS FOR FUTURE RETAIL FINANCING OR LEASE PROGRAMS.

NOTICE TO LESSEE: (1) DO NOT SIGN THIS LEASE BEFORE YOU READ IT. (2) YOU ARE ENTITLED TO A COPY OF THIS LEASE.

THIS IS A LEASE AGREEMENT. THIS IS NOT A PURCHASE AGREEMENT. PLEASE REVIEW THESE MATTERS CAREFULLY AND SEEK INDEPENDENT PROFESSIONAL ADVICE IF YOU HAVE ANY QUESTIONS CONCERNING THIS TRANSACTION. YOU ARE ENTITLED TO AN EXACT COPY OF THE AGREEMENT YOU SIGN.

BY SIGNING BELOW, YOU ACKNOWLEDGE THAT: (1) YOU HAVE READ THE ENTIRE LEASE; (2) YOU AGREE TO ALL OF THE PROVISIONS OF THIS LEASE; (3) YOU HAVE RECEIVED A COMPLETELY FILLED-IN COPY OF THIS LEASE; AND (4) THIS IS A LEASE AND YOU HAVE NO OWNERSHIP RIGHTS IN THE VEHICLE UNLESS AND UNTIL YOU EXERCISE YOUR OPTION TO PURCHASE THE VEHICLE SET FORTH IN THIS LEASE.

**A. INDIVIDUAL LESSEE SIGNATURE(S)**

Lessee Signature: X _Patricia W Robinson_   Co-Lessee Signature: X _Johnnie L Robinson_

Name: **PATRICIA W ROBINSON**   Name: **JOHNNIE L ROBINSON**

**B. BUSINESS LESSEE SIGNATURE**

Signature: X _____ **N/A** _____   Name: _ **N/A** _____   Title: _____ **N/A** _____

**C. LESSOR SIGNATURE AND ASSIGNMENT.** The authorized signature of the Lessor below has the effect of: (1) accepting the terms and conditions of this Lease; (2) acknowledging verification of the Lessee's insurance coverage required by this Lease; and (3) assigning to **Hyundai Lease Titling Trust,** P.O. Box 20829, Fountain Valley, CA 92728-0829 or its successors and assigns all of its right, title and interest in and to this Lease, the proceeds of this Lease and the Vehicle, according to the terms and conditions of the Dealer Lease Sale Agreement between Hyundai Capital America and the Lessor.

Authorized Signature: X _____   Name: **JOHNATHON ROSARIO** _____   Title: **FI MANAGER**

**AutoPay Authorization**

I authorize Hyundai Capital America dba Genesis Finance (Genesis Finance USA in Utah) ("Genesis Finance") to initiate monthly Automated Clearing House (ACH) debit entries (and, if necessary, other debit or credit entries to correct errors) to the deposit account listed below (the "Account") on the payment due date specified in my motor vehicle lease (the "Lease"), each in the amount of the monthly payment specified in the Lease plus any applicable sales, use, rental or other taxes and any other charges due under the Lease and reflected on the most recent monthly statement. I agree that I will remain responsible for arranging payments due under the Lease until Genesis Finance confirms that it has initiated AutoPay, which may take up to two billing cycles. This authorization shall remain in effect, and Genesis Finance will continue to charge my Account, until I revoke my authorization by calling Genesis Finance's Customer Service Department at 84-GENESIS-7 (844 363-7477) at least 3 business days prior to the next scheduled payment due date to avoid further charges. I understand that when I revoke this authorization I will be responsible for scheduling and making all subsequent payments to Genesis Finance when due under the Lease. In addition, if funds are not available when Genesis Finance attempts to charge my Account, I will be responsible for arranging alternative payment to Genesis Finance and agree to pay Genesis Finance any late charges due under the Lease as well as any returned check, processing or insufficient funds fees as set forth in the Lease. Except to the extent imposed by applicable law, Genesis Finance shall have no liability to me with respect to a debit against the Account which is drawn in an incorrect amount or drawn after I have revoked authorization for AutoPay, other than the responsibility to correct any error. I represent to Genesis Finance that I am the holder of the Account or am authorized to make payments from the Account. I acknowledge that I received a copy of this authorization for my records.

| N/A | N/A | N/A | N/A | N/A |
|---|---|---|---|---|
| Bank Name | Name of Account Holder 1 | Date | Name of Account Holder 2 | Date |

| N/A | | | | |
|---|---|---|---|---|
| Bank Account Number | | | | |

| N/A | N/A | N/A | N/A | N/A |
|---|---|---|---|---|
| Bank Routing Number (9 digits) | Signature of Account Holder 1 | | Signature of Account Holder 2 | |

| N/A | N/A | |
|---|---|---|
| Account Type (Checking, Savings or Money Market) | Account Holder Email Address | ☐ Attached is a copy of a cancelled check |

**By signing this Lease, you agree that you have read all 8 pages of this entire Lease. See additional pages for additional lease terms.**

## 19. LATE CHARGES, FEES AND SECURITY DEPOSIT

**A. RETURNED INSTRUMENT CHARGE.** You will pay us a returned instrument charge of **$15** for any check, instrument or electronic payment that is returned unpaid for any reason, except as limited by applicable law.

**B. LATE CHARGE.** To the extent permitted by applicable law, you will pay us a late charge of the lesser of $20 or 5% of the unpaid portion of any Monthly Payment that is not received within 10 days after it is due, except in Colorado, Kansas, Louisiana and Maine. Colorado: If this Lease is entered into in Colorado, we have the right to assess a late charge of the lesser of $15 or 5% of the unpaid portion of any Monthly Payment that is not received within 10 days after it is due. Kansas and Louisiana: If this Lease is entered into in Kansas or Louisiana, we have the right to assess a late charge of the lesser of $20 or 5% of the unpaid portion of any Monthly Payment that is not received within 10 days after it is due. Maine: If this Lease is entered into in Maine, we have the right to assess a late charge of the lesser of $10 or 5% of the unpaid portion of any Monthly Payment that is not received within 15 days after it is due.

**C. ADMINISTRATIVE FEE.** If you do not pay any government-imposed fee, registration or other fee, storage, towing, penalty, toll, parking ticket or tax related to the Vehicle and we pay it on your behalf, you will reimburse us for the amount paid plus we may charge you and add to the amount you owe under this Lease a **$20** administrative fee per incident, except as limited by applicable law.

**D. FEES FOR ADDITIONAL SERVICES.** Unless prohibited by applicable law, we may charge you and add to the amount you owe under this Lease a fee for any additional services you request from us relating to this Lease that are outside the ordinary servicing of this Lease. The fee will be in an amount agreed to by phone or in writing at the time you request the service, as may be limited by applicable law. For example, a convenience or other fee will apply to any expedited payment service, such as payments made by telephone, the Internet, text messaging, or by credit or debit card; we may receive all or a portion of the fee collected by a money transfer agent or other party we have contracted with to process the payment, except where prohibited by applicable law.

**E. SECURITY DEPOSIT.** We may apply some or all of the security deposit to any amounts you owe under this Lease. If you purchase the Vehicle, we may credit the security deposit towards the Purchase Price. After this Lease is terminated, we will return any unused security deposit to the Lessee whose name appears first under Section 1 of this Lease, as required by law. We do not keep the security deposit in a separate bank or set aside on our books, unless required by law. You are not entitled to any interest, increase, or profit on the security deposit.

## 20. VEHICLE INSURANCE

**A. INSURANCE REQUIREMENTS.** You must maintain primary insurance coverage in your name in the amount and types indicated below, at your expense, during the Lease Term and until the Vehicle is returned to us:

(1) Requirements of minimum insurance coverage is based on the state where the Vehicle is primarily garaged:

    a. If the Vehicle is primarily garaged in CT, KY, NJ, or RI, the minimum insurance coverage requirements are: liability insurance with limits of not less than $100,000 per person for bodily injury, $300,000 per accident for bodily injury and $50,000 per accident for property damage, or $300,000 combined single limit;

    b. If the Vehicle is primarily garaged in any other state (excluding CT, KY, NJ, or RI), the minimum insurance coverage requirements are: liability insurance with limits not less than the garaging state required minimum per person for bodily injury, garaging state required minimum per accident for bodily injury and state required minimum per accident for property damage, or state required minimums combined single limit. Provided, however, that if the garaging state does not require any of the above insurance coverage, the requirements of paragraph 20A1a will apply.

(2) All States require collision insurance with a deductible no higher than $1,000;

(3) All States require comprehensive fire and theft insurance with a deductible no higher than $1,000; and

(4) All States require uninsured motorist coverage as required by law in the state where the Vehicle is registered.

You may obtain the insurance from any licensed insurer reasonably acceptable to us. Assignee must be shown as additional insured and loss payee. The policy must require the insurance company to notify us at least 10 days before any non-renewal, cancellation, reduction or other material coverage change. You must provide us with a copy of your insurance policy within 30 days after the Lease Date and thereafter upon request. **Failure to maintain the required insurance is a Default under this Lease.**

**B. LESSOR'S PURCHASE OF INSURANCE.** If you fail to maintain the required insurance, we may, at our option, purchase the insurance. We may add the amount we pay for this insurance to the amounts you owe under this Lease or require that you pay it immediately. If we buy this insurance, it may cover your interest and our interest, or it may cover only our interest, unless the law requires us to buy insurance that also protects your interests.

**C. NOTIFICATION OF LOSS; SETTLEMENT OF CLAIMS.** You will notify us and your insurance company within 24 hours after any damage, loss, theft, seizure, or impoundment of the Vehicle. We are entitled to all insurance proceeds for physical damage to or loss of the Vehicle, even if the amount of the proceeds exceeds the Adjusted Lease Balance or other amounts you owe under this Lease. You authorize us, on your behalf, to receive and endorse your name on checks, drafts or other instruments received from your insurance company, and settle or release any claim under the insurance related to our ownership of the Vehicle. You also assign to us any other insurance proceeds related to this Lease or our interest in the Vehicle.

**PHYSICAL DAMAGE OR LIABILITY INSURANCE COVERAGE FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS LEASE.**

## 21. VEHICLE CONDITION MAINTENANCE, USE AND TAXES

**A. VEHICLE CONDITION.** You have inspected the Vehicle and agree that at Lease signing: (i) the Vehicle is in good condition in both operation and appearance, and (ii) is equipped with all requested features and options.

**B. VEHICLE MAINTENANCE AND OPERATING COSTS.** You are responsible for maintaining, servicing and repairing the Vehicle, at your cost, according to the owner's manual maintenance schedule and to ensure that the warranty, if any, remains valid. You will use original equipment manufacturer's parts or those of equal value in the maintenance and service of the Vehicle. You agree to comply with all manufacturer recall notices. We are not obligated to provide you with a replacement vehicle for any reason. You must maintain and keep in the Vehicle a record of all maintenance performed on the Vehicle. You must make the maintenance record available to us at any time and provide it to us at the end of the Lease. You agree to pay all operating costs, including, but not limited to, gasoline, oil, antifreeze, parking fees, towing and replacement tires. You are liable for the payment of all tolls and any fines for toll evasion.

**C. VEHICLE INSPECTION AND USE.** We may inspect the Vehicle at any reasonable time and place. You will not allow any liens or claims to be placed or made against the Vehicle. **You are responsible for the risk of loss, damage, or destruction of the Vehicle during the Lease Term and until you return the Vehicle to us.** You will not: (1) use the Vehicle for any unlawful or improper purpose or to commit any illegal act; (2) change or install equipment without our prior written consent or that renders the Vehicle unsafe or unlawful to operate, but if you add equipment to the Vehicle, it will become our property and you will pay us the cost of removing it at the end of this Lease; (3) use the Vehicle in any way prohibited by any applicable insurance policy or manufacturer's warranty or in a manner that causes abnormal depreciation; (4) allow unlicensed drivers to drive the Vehicle; (5) remove the Vehicle for more than 30 consecutive days from the state where you reside without our prior written permission (for purposes of this Section 21C, the state where you reside is the state where the Vehicle was originally titled on the Lease Date or, if applicable, the most recent state where we permitted you to title the Vehicle); (6) remove the Vehicle from the United States for any period of time without our prior written permission; or (7) transport passengers or goods for hire or use the Vehicle as a rental, taxi, limousine or shuttle service, without our prior written permission. You will also not let anyone else do any of these things.

**D. LICENSE, TITLING, REGISTRATION AND TAXES.**

(1) Lessee Responsibilities. You agree to license, title and register the Vehicle in the state in which it is garaged/parked. If you move or change the Vehicle garaging/ parking address, you will notify us immediately and pay for all resulting taxes and title, registration, or other fees. You also agree to provide us promptly upon request with the Vehicle's current license plate number, date and state of registration, and any other information about the Vehicle we may reasonably request. If you fail to provide us with that information and we need to obtain it from another source, such as the state motor vehicles department, you will reimburse us for the reasonable expenses we incur in doing so.

(2) Official Fees. You agree to timely pay all license, title, registration, inspection, testing, and other fees, taxes and charges imposed by government authorities or pursuant to law in connection with the Vehicle or this Lease. You must pay all such fees incurred during the Lease Term, even if they are assessed and billed after the Lease has ended.

(3) Tax Reserve. At termination (whether early or at maturity) of this Lease, you agree to pay us an amount ("Tax Reserve") we estimate to pay personal property and other taxes applicable to the Vehicle or this Lease for tax periods occurring before termination. If the actual taxes are more than the Tax Reserve collected, you will also owe us the difference. If they are less, we will refund you any excess. You will not be entitled to interest on any Tax Reserve we collect from you. We are not obligated to apply for any refund or abatement of official fees or taxes, including personal property taxes. **Some states assess personal property taxes for the full tax year, without prorating the tax if the Vehicle is sold or transferred during the tax year. You are responsible for the taxes assessed for the full tax year, even if the Lease terminates before the end of the Lease year.**

(4) Retitling Fee. In addition to any government-imposed fees, we may charge you and add to the amount you owe under this Lease a retitling fee of **$25** if the Vehicle is re-titled/re-registered because you move, change your name or add or remove a lessee from the Vehicle's title, unless the fee is prohibited by law.

**E. ASSIGNMENT AND TRANSFER OF THE VEHICLE. You may not assign, sell, give a security interest in, sublease or arrange an assumption of your interests or rights under this Lease or in the Vehicle without our prior written permission.**

## 22. EARLY TERMINATION

A. **LESSEE'S RIGHT TO TERMINATE EARLY.** You have the right to terminate this Lease early (before the end of the Lease Term), by returning the Vehicle to us or other person we designate, and paying the applicable Early Termination Liability set forth in Section 22C below.

B. **LESSOR'S RIGHT TO TERMINATE EARLY.** We may terminate this Lease early if you are in default (see Section 25C). If we terminate this Lease early, you will owe us the applicable Early Termination Liability set forth in Section 22C below.

C. **EARLY TERMINATION LIABILITY.** If this Lease is terminated early pursuant to Sections 22A or 22B of this Lease, you agree to pay us the sum of items (1) through (4) as follows: (1) any unpaid Monthly Payments accrued up to the termination date, plus (2) official fees and taxes in connection with the termination, plus (3) all other amounts due and owing under this Lease, except excess wear and mileage, plus (4) an **early termination charge** calculated as follows:

   (i) Lessee's Early Termination:

    (a) if you terminate this Lease more than 120 days before the end of the Lease Term, the early termination charge you owe (provided the Vehicle is not a Total Loss) will be equal to the lesser of the Standard Formula and the Remaining Payments Formula defined below.

      (x) Standard Formula: The sum of (1) the difference, if any, between the Adjusted Lease Balance and the Vehicle's Realized Value, plus (2) an early termination fee in an amount equal to the Turn-In Fee disclosed in Section 4A of this Lease, and plus (3) the actual expenses we incur in connection with preparing for sale and selling the vehicle, including our third party auction fees and costs for transportation and reconditioning of the Vehicle prior to sale.

      (y) Remaining Payments Formula: The sum of: (1) all scheduled monthly Lease payments from the termination date through the end of the Lease Term, plus (2) as permitted by applicable law, any excess mileage, plus (3) as permitted by applicable law, any excess wear and use (See Section 24A), and plus (4) the Turn-In Fee amount disclosed in Section 4A of this Lease.

    (b) if you terminate this Lease 120 days or less before the end of the Lease Term, the early termination charge you owe will be the amount equal to the Remaining Payments Formula, provided the Vehicle is not a Total Loss.

    (c) If you terminate this Lease early in connection with a Total Loss, the early termination charge you owe will be the Standard Formula, minus the early termination fee referenced in Section 22C(i)(x)(2) above ("Total Loss Early Termination Charge").

   (ii) Lessor's Early Termination: the early termination charge if we terminate this Lease early will be the amount equal to the Standard Formula; provided that, if we repossess the Vehicle, in lieu of the early termination fee component of the Standard Formula, you will be charged the actual expenses we incur in connection with repossessing, obtaining and storing the Vehicle.

D. **ADJUSTED LEASE BALANCE.** Your Adjusted Lease Balance is the Adjusted Capitalized Cost disclosed on page 2 of this Lease, less all depreciation and other amortized amounts accrued up to the termination date, calculated according to the Constant Yield Method. "Constant Yield Method" means the method of determining the rent charge portion of each base monthly payment under which the rent charge for each month is earned in advance by multiplying the constant rate implicit in the Lease times the balance subject to rent charge as it declines during the scheduled Lease Term. At any time during the scheduled Lease Term, the balance subject to rent charge is the difference between the Adjusted Capitalized Cost and the sum of (1) all depreciation and other amortized amounts accrued during the preceding months and (2) the first base monthly payment.

E. **REALIZED VALUE.** If you obtain an independent appraisal (see below), the Realized Value is the appraised amount. If the Vehicle is a total loss, the Realized Value is the amount of any insurance proceeds we receive under your insurance plus any amount received from any other party in payment of the loss; if there is no payment, the Realized Value is zero. In all other cases, the Vehicle's Realized Value will be, at our option: (1) the gross wholesale sales price we receive for the Vehicle at disposition; (2) the fair wholesale market value of the Vehicle at termination according to a recognized used vehicle guide customarily used by motor vehicle dealers selected by us, including, but not limited to, Black Book, or other commercially reasonable valuation methodology, taking into consideration the Vehicle's mileage and physical condition; or (3) any amount you and we agree to in writing after termination.

F. **INDEPENDENT APPRAISAL.** You may obtain, at your expense, a professional appraisal by an independent third party, agreed to by you and us, of the value that could be realized at sale of the Vehicle at wholesale. The appraisal amount shall be final and binding.

## 23. PURCHASE OPTIONS AND VEHICLE RETURN

A. **PURCHASE OPTION AT MATURITY.** At the Scheduled Maturity Date, you may purchase the Vehicle under the conditions and for the amount set forth in Section 9, if you are not in Default.

B. **PURCHASE OPTION BEFORE MATURITY.** You have an option to purchase the Vehicle at any time before the Scheduled Maturity Date if you are not in Default, under the terms and conditions in Section 9, except that the Purchase Price will be the Adjusted Lease Balance figured according to Section 22D, above.

C. **ADDITIONAL PURCHASE OPTION CONDITIONS. You may not transfer or assign your purchase option to any other party without Assignee's prior written permission.** If you reside in a state that requires a seller to have a motor vehicle dealer license to sell used vehicles, you must purchase the Vehicle from the Lessor (Dealer) or from another authorized, licensed dealer selected by Assignee. Please notify us at least thirty (30) days before you intend to exercise your purchase option so that we may make appropriate arrangements with a licensed dealer, if necessary.

D. **VEHICLE RETURN.** Unless you purchase the Vehicle, you must return it to us or the authorized Hyundai or Genesis dealer (or other designee) we designate at the time and place we specify, at your expense, upon termination of this Lease (whether early or at the Scheduled Maturity Date). At that time, you must give us a completed, signed odometer disclosure statement (see Section 24B), and a Vehicle condition report if we request one. You must also pay us any amounts you owe under the Lease.

If you fail to return the Vehicle to us, as required above, you will still owe us the Monthly Payments and other amounts that may come due and, if the Vehicle is not returned by the Scheduled Maturity Date, you will owe us an amount equal to the Monthly Payment for each Month or partial month that has elapsed from Scheduled Maturity Date to the date of actual return.

E. **SCHEDULED TERMINATION.** If this Lease is not terminated early and if you do not purchase the Vehicle, this Lease will terminate or end on the Scheduled Maturity Date and you must return the Vehicle (see Section 23D, above). Upon return, you will owe us:

   (1) The Turn-in Fee disclosed in Section 4A; **plus**
   (2) Any amounts owed for excess wear; **plus**
   (3) Any amounts owed for excess mileage; **plus**
   (4) All other amounts that are due or past due under this Lease; **plus**
   (5) Any official fees and taxes due in connection with Lease termination.

## 24. STANDARDS FOR WEAR AND USE, ODOMETER MAINTENANCE AND STATEMENT

A. **STANDARDS FOR WEAR AND USE.** When returned to us, the Vehicle must be clean and in the same condition as it was when delivered to you, except for reasonable wear. If you do not purchase the Vehicle, then, upon Vehicle return at Scheduled Maturity Date or early termination as outlined in Section 22C, we will charge you for excess mileage and the estimated cost to repair or replace damage or wear to the Vehicle in excess of normal wear and use, whether or not such repairs are actually made, as permitted by applicable law. All repairs and part replacements must be made with original manufacturer's parts or those of equal quality. Excess wear and use includes, but is not limited to, the estimated cost to repair and/or replace:

   (1) mechanical or electrical parts, including but not limited to, power accessories and lighting, that do not work properly;
   (2) body damage, such as dents, scratches, chips, cuts, damage from water, sand or freezing, rusted or corroded areas on the body or other body or frame damage;
   (3) paint damage including but not limited to mismatched, peeling or faded paint, poor quality or other damage to the paint, poor quality repairs, or lettering or "wrapping" on the body;
   (4) damage to glass components including but not limited to the following: cracks, scratches, pits or chips in the windshield; broken windows or broken power windows; broken or missing headlight lenses, sealed beams or side mirrors;
   (5) interior upholstery, dashboard or other surfaces that are burned, stained, cut or scratched;
   (6) tires not comparable in type and quality to original tires with emergency "doughnut" spare or inflation kit, as applicable, or any tire that is flat, leaking, has been punctured or damaged (whether or not repaired) or that has less than 1/8 inch of tread remaining at its shallowest point;
   (7) missing parts, accessories, and components, including keys and remote entry devices, owner's manual, floor mats, wheel covers, mirrors, GPS or audio components;
   (8) any addition or modification to the Vehicle without our prior written consent; or
   (9) any other wear beyond normal wear or that renders the Vehicle unsafe or incapable of passing any required inspection.

**B. ODOMETER; REQUIRED STATEMENT.** You will maintain the odometer of the Vehicle so that it always reflects the Vehicle's actual mileage. If the odometer is at any time inoperative, upon return of the Vehicle, you will provide us with reasonable evidence of the Vehicle's actual mileage. You will provide us with an odometer certification at any time we request one. We may request more than one certification during the term of this Lease.

**Notice: Federal law requires you to give us a statement of the Vehicle's mileage in connection with a transfer of Vehicle ownership. You may be fined and/or imprisoned if you do not complete the disclosure or if you make a false statement.**

If the odometer was tampered with or otherwise does not work correctly and you cannot prove the mileage shown on the odometer, we may charge you and add the amount you owe under this lease the greater of fifteen percent (15%) of the Residual Value or the amount we estimate the Vehicle's fair market value has been reduced by reason of additional miles not reflected on the odometer, the inability to determine the Vehicle's actual mileage, or both.

## 25. LOSS OF VEHICLE; DEFAULT AND REMEDIES

**A. TOTAL LOSS OR DESTRUCTION OF VEHICLE.** If the Vehicle is lost, stolen, destroyed or damaged beyond repair (collectively a "Total Loss"), this Lease will terminate and you will owe the Early Termination Liability as outlined in Section 22C, including the Total Loss Early Termination Charge defined in Section 22C(i)(c).

**B. GAP WAIVER.** Except as otherwise provided, if the Vehicle is a Total Loss and you maintained the insurance required by this Lease, we will waive the Total Loss Early Termination Charge set forth in Section 22C(i)(c), when we receive your insurance proceeds for the Vehicle's actual cash value. You must report the Total Loss to us promptly, pay your insurance deductible and comply with all other terms of this Lease. There is **no charge** to you for this waiver. Exceptions: *This waiver does not apply if:*

(1) The Vehicle was stolen and no police report was filed;
(2) The Total Loss occurred while the Vehicle was not within the United States of America, its territories or possessions, or Canada, regardless of whether we consented;
(3) The Total Loss resulted from your intentional misrepresentation, wrongful act or omission, or gross negligence;
(4) There is a Default under this Lease which caused or contributed to the Total Loss; or
(5) You fail to timely provide us or your designee with any information or documents reasonably requested in connection with the Total Loss, including a police report and insurance information.

**C. DEFAULT.** You will be in default ("Default") if any of the following occurs:

(1) You do not pay a Monthly Payment when due (or within any grace period the law allows) or any other amount owed when we ask you to pay it;
(2) Any information in your credit application or that of a guarantor of this Lease is false or misleading;
(3) You fail to maintain required insurance;
(4) The Vehicle is subject to actual or threatened confiscation, impoundment, seizure, forfeiture or other involuntary transfer by a government entity or legal process;
(5) You die, are declared incompetent or are incarcerated and there is no surviving lessee, you become insolvent, file a bankruptcy petition, have a bankruptcy petition filed against you or you dissolve or cease business affairs, or make an assignment for the benefit of creditors;
(6) You fail to return the Vehicle to us at the time and place we specify;
(7) The Vehicle is used in any race, speed contest or other contest, or any other illegal manner, with or without your knowledge or consent;
(8) The Vehicle is regularly used by anyone who is not a Lessee under this Lease, unless you have obtained our prior written consent;
(9) Your driver's license expires or is suspended, revoked, canceled or is otherwise restricted, or you become ineligible to obtain a driver's license;
(10) You break any other promise or fail to meet any other obligation under this Lease or in any other agreement with us;
(11) You provided an incorrect Outstanding Prior Credit or Lease Balance and you fail to pay us the excess upon demand;
(12) Anything else happens that adversely affects our interest in the Vehicle or your ability to comply with obligations under the Lease; or
(13) You do anything the law says is a default.

**D. REMEDIES FOR DEFAULT.** If you are in Default, after waiting any time the law requires, we may take any one or more of the following actions, to the extent not prohibited by state law:

(1) Terminate this Lease and/or your rights to use the Vehicle and require you to pay the amount due at early termination;
(2) Take (repossess) the Vehicle without prior demand, unless otherwise required by law. If the Vehicle is equipped with an electronic tracking device, you understand and agree that we may use the device to find the Vehicle and exercise our right to take possession. We may take any personal property that is in or on the Vehicle when we take it. We will hold the personal property for you for ten (10) days, but we will neither be responsible for safekeeping such property nor be required to notify you about it, unless otherwise required by law. If you do not pick up the property within that time, we may dispose of it in any way we determine;
(3) Charge and collect from you all out-of-pocket expenses we reasonably incur in connection with our attempts to collect what you owe or enforce our rights under this Lease, including, but not limited to, attorneys' fees for attorneys who are not our employees, court costs, skip-tracing, repossession efforts, transportation and storage of the Vehicle, except as limited by applicable law provided that no attorneys' fees will be owed if this Lease if governed by Iowa, Maine or Ohio law;
(4) Take any reasonable action to correct the Default or to protect our interest in the Vehicle (for example, buying insurance or removing you from this Lease). You agree to reimburse us for any amounts we pay to correct or cover your Default;
(5) Require you to return the Vehicle and any related records or make them available to us in a reasonable manner;
(6) Make a claim for or cancel any and all insurance and optional products and services included with this Lease that may be available on your Default or on the termination of the Lease and apply any amount received to the amount you owe; and
(7) Use any remedy we have at law or in equity.

NOTICE TO COLORADO LESSEES IN EVENT OF TOLL VIOLATIONS. Pursuant to the requirements of Colorado Revised Statutes § 43-4-808(2)(f)(II)(B), you will be liable for payment of all toll evasion violation civil penalties incurred on or after the date you take possession of the motor vehicle. The Lessor will provide your name, address and state driver's license number to the proper authorities when a toll evasion violation civil penalty is incurred during the term of this Lease.

## 26. ADDITIONAL TERMS AND CONDITIONS

**A. PAYMENTS.** All payments due under this Lease must be made in good funds of the United States, by check, money order, cashier's check, electronic funds transfer, or as otherwise specified by Assignee.

**B. INDEMNIFICATION. You agree to indemnify and hold us and our assignees, agents and insurers harmless from all claims, demands, losses and expenses (including reasonable attorneys' fees to the extent not prohibited by law provided that no attorneys' fees will be owed if this Lease if governed by Iowa, Maine or Ohio law) arising from the Vehicle's use, condition or operation, including claims based on strict liability and negligent entrustment.**

**C. RETURNED INSURANCE PREMIUMS AND SERVICE CONTRACT CHARGES.** This lease may contain charges for optional insurance, service contracts or other contracts for products you purchased in connection with this Lease. You agree that we can claim benefits under such contracts. Unless prohibited by law, we may, upon your default or termination of this Lease, cancel any such contracts to obtain refunds of unearned charges or premiums. You authorize us to subtract any refund we receive on your behalf for any such contracts that are cancelled from the amount you owe under this Lease. If you receive a refund for any cancelled optional product contract, you must pay the entire amount of the refund to us.

**D. ASSIGNEE LIABILITY.** Except as limited by applicable law, you agree not to assert against any Assignee of this Lease, or its agents, any claims or defenses you may have against the Lessor from whom you originally leased the Vehicle.

**E. OWNERSHIP.** We own the Vehicle solely, including all original and after-market accessories installed on the Vehicle. This is a true lease for tax and other purposes and we receive all benefits of ownership. We have not given you any tax advice regarding this Lease.

**F. SECURITY INTEREST.** You grant us a security interest, to the extent permitted by state law, in the property listed below to secure performance of your obligations under this Lease: (1) loss proceeds of any insurance which you maintain with respect to the Vehicle; (2) the proceeds of any mechanical breakdown protection contract, service contract, excess wear and use waiver or other optional insurance or other product purchased with this Lease; and (3) any unearned premiums or refunds of any of the foregoing.

**G. WAIVER.** We do not waive our rights or remedies under this Lease by delaying or failing to exercise them at any time. Our acceptance of late or partial payments under this Lease will not constitute a waiver of our right to receive timely payment in full or of any other rights.

**H. JOINT LIABILITY.** Lessee and any Co-Lessee are jointly and severally liable under this Lease. Our release, waiver or delay in the enforcement of our rights as to one Lessee shall not affect our rights as to the other Lessee signing this Lease.

**I. ADDRESS CHANGES AND NOTICES.** We will send notices (including any default and repossession notices) and correspondence to you at the Billing Address. If the Billing Address or the Garaging Address changes or is incorrect, you agree to notify us of the correct or new address within 15 days after the change. If you move and fail to notify us of your new address and we receive a forwarding address for you from the United States Postal Service, we will update your Billing Address to that forwarding address. If we are required to send you any notices, you agree that 10 days' notice is a reasonable notice period, unless state law requires a longer period.

**J. SERVICING AND COLLECTION CALLS.** You agree that we, our agents and/or others we retain may monitor and record telephone calls with you in connection with this Lease. You also agree that we, our agents and/or others we retain may use an automatic telephone dialing system or artificial or prerecorded voice to call you on your cellular telephone or on any service for which you are charged for the call (including sending voicemail messages, text messages and e-mail), unless prohibited by law. This agreement does not restrict us from contacting you using any other means allowed by law.

**K. LIMITED POWER OF ATTORNEY.** You appoint us or our agent as your attorney-in-fact to do the following: (1) settle any insurance claim related to the Vehicle; (2) endorse your name on any check or draft we receive for damage or loss of the Vehicle; and (3) to sign your name to any title, registration or other documents related to the Vehicle, for example, state motor vehicles department applications and documents. This power of attorney is coupled with an interest in the Vehicle and is not revocable.

**L. ADDITIONAL INFORMATION AND DOCUMENTS.** During the term of this Lease, you agree to provide us with additional documents and information we may reasonably request to verify any information provided in connection with your credit/lease application or your compliance with this Lease. You also agree to sign additional documents we reasonably request to carry out the terms of this Lease, including, but not limited to, motor vehicles department forms and applications.

**M. OUR ASSIGNMENT OF THIS LEASE.** We may assign some or all of our rights and obligations under this Lease at any time to anyone, including the HLTT, without your consent. Our assignment of this Lease will not affect your rights or obligation under this Lease. **Lessor and its employees are not agents of Assignee or Genesis Finance and have no authority to obligate either of them.** Genesis Finance, as the agent for the HLTT, has the power to act on the HLTT's behalf to administer, enforce and defend this Lease. You agree to pay all amounts owed under this Lease to Genesis Finance, or as otherwise directed by us. As part of a like-kind exchange program, the Assignee has engaged HCA Exchange, Inc., as a qualified intermediary. Dealer is hereby notified that Assignee has assigned to HCA Exchange, Inc., its rights (but not its obligations) in the agreement for the purchase of the Vehicle. If Lessee purchases the Vehicle, Lessee is hereby notified that the Assignee has engaged HCA Exchange, Inc., as qualified intermediary and has assigned to HCA Exchange, Inc., its rights (but not its obligations) in the agreement for the sale of the Vehicle.

**N. ENFORCEABILITY.** If any provision of this Lease is found unenforceable, void, illegal or otherwise against applicable law, the remaining provisions of this Lease will remain in full force and effect.

**O. ENTIRE AGREEMENT. Important. Read before signing. The terms of this Lease should be read carefully because only those terms in writing are enforceable. Terms and promises, including oral promises, are not enforceable unless they are expressly contained in this Lease. This Lease is a final expression of the lease agreement between you and us. This Lease may not be contradicted by evidence of any prior oral lease agreement or of a contemporaneous oral lease agreement between you and us.**

**P. GOVERNING LAW.** This Lease will be governed and enforced by federal law and the internal laws of the state in which the Dealer is located as shown by the Dealer's address in Section 1 of this Lease.

**Q. NOTICE TO UTAH LESSEES:** As required by Utah law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

**R. CLASS ACTION WAIVER: TO THE EXTENT PERMITTED BY APPLICABLE LAW, YOU HEREBY WAIVE ANY RIGHT YOU MAY HAVE TO BRING OR PARTICIPATE IN A CLASS ACTION RELATED TO THIS LEASE.**